831 So.2d 553 (2002)
Norman Arnell LEWIS, Appellant,
v.
STATE of Mississippi, Appellee.
No. 2001-KA-01050-COA.
Court of Appeals of Mississippi.
November 26, 2002.
*555 Glenn F. Rishel, attorney for appellant.
Office of the Attorney General by Charles W. Maris, attorney for appellee.
Before SOUTHWICK, P.J., THOMAS and CHANDLER, JJ.
SOUTHWICK, P.J., for the court.
¶ 1. Norman Arnell Lewis was found guilty of felony driving under the influence by a circuit court jury. Lewis argues on appeal that he was subjected to double jeopardy, that certain jury instructions misstated the law, that a circumstantial evidence jury instruction should have been given, and that documentary evidence of a prior driving under the influence conviction was improperly admitted. We find reversible error in an instruction that defined what it meant to operate a motor vehicle. We reverse and remand.

FACTS
¶ 2. Some time after 10:00 p.m. on March 19, 2000, Gulfport police officer Steven Johnson came upon a Jeep Wrangler parked in the left lane of the east-bound lane of Highway 90. Officer Johnson approached the Jeep in his marked police vehicle and asked if assistance was required. Norman Lewis called back that he was out of gas. Officer Johnson instructed Lewis to place the Jeep in neutral so it could be pushed from the lane of traffic.
¶ 3. When he was unable to move the vehicle, Officer Johnson walked up to the driver's side of the Jeep. Johnson detected a strong odor of alcohol on Lewis's breath, who was seated in the driver's seat. The keys were in the ignition but the engine was not running. No one else was in the vehicle. Lewis also appeared glassy-eyed and slurred his speech. Johnson requested that Lewis step out of the vehicle. Lewis complied, and Johnson performed a field sobriety test. Based upon this test, Lewis was arrested for driving under the influence. Lewis identified himself to the officer as Cedrick Lewis, his twin brother. The Jeep was impounded. During an inventory of the contents of the Jeep, Norman Lewis's wallet and identification were found in the vehicle.
¶ 4. A search warrant was issued to obtain a blood sample from Lewis to determine his blood alcohol content. The results indicated a blood alcohol level of 0.30. At trial, Lewis claimed his friend, Willie Brooks, had been driving but left the vehicle to find more gasoline, leaving Lewis *556 alone in the vehicle. After conviction by a jury, Lewis appeals.

DISCUSSION

1. Double Jeopardy
¶ 5. It is unlawful for any person to operate a vehicle who "(a) is under the influence of intoxicating alcohol; ... or (c) has ten one-hundredths percent ... in the person's blood based upon grams of alcohol per one hundred milliliters of blood." Miss.Code Ann. § 63-11-30(1) (Supp.2001).
¶ 6. Both subsections (a) and (c) were explained in jury instructions, with the explanation that Lewis could be convicted if he had violated either of them beyond a reasonable doubt. Lewis argues that under the "same elements" test, subsections (a) and (c) are identical crimes and he was therefore subjected to unconstitutional double jeopardy by being simultaneously tried twice for the same crime. He further argues that he was prejudiced by having to guess which charge to defend.
¶ 7. This issue has been directly addressed by the supreme court in Young v. City of Brookhaven, 693 So.2d 1355 (Miss. 1997). The court held that subsections (a) and (c) are not separate offenses but rather alternative routes to establishing a violation of the single statute. Presenting both to the jury is not error. Id at 1358.
¶ 8. Lewis was convicted for a violation of Mississippi Code section 63-11-30. He received but a single sentence for that conviction. The fact that the State may establish a violation of this statute in a variety of ways does not constitute double jeopardy.

2. Jury instruction defining "operate"
¶ 9. Lewis argues that a jury instruction incorrectly defined the word "operate." The statute makes it "unlawful for any person to drive or otherwise operate a vehicle" while under the influence of alcohol or other substance. One instruction informed the jury that guilt should be found if Lewis "did unlawfully, wilfully, and feloniously drive and/or operate a motor vehicle" while having an alcohol concentration of at least .10 % in his blood. An instruction defined "operate."
[No. 4A] The term "operate" as used in other instructions of the Court is not limited to the actual driving of a motor vehicle, and a person can operate a vehicle within the meaning of the law without actually driving if he is behind the wheel of the motor vehicle and in full control of the motor vehicle.
The instruction closed by saying that this was a fact question for jurors, which they could answer by using any of the evidence presented in the case.
¶ 10. One defect that Lewis asserts arises from a precedent on which he relies. Jones v. State, 461 So.2d 686 (Miss.1984). There the Court gave this explanation:
A person who is sitting behind the steering wheel of an automobile, in full control of the automobile, where the engine is running and the vehicle is situated on a public roadway, albeit not under way at the time, is "operating" the motor vehicle within the meaning and contemplation of Section 63-11-30(1)(c).
Jones, 461 So.2d at 695. The evidence against Lewis was that the engine of his vehicle was never on after the time that he was discovered by police. However, Jones was addressing the argument that the defendant there should have been acquitted because he was only sitting behind the wheel of a stopped car with the motor running, and no one could testify to having seen the vehicle move while he was in his intoxicated state. We find that the Court was only describing the facts of the case *557 and holding that they constituted "operating" the vehicle.
¶ 11. What we find required by the statute is that the vehicle at least be capable of being moved by the defendant, whether the accused was then in the act of causing it to move or not. Both the accused and the vehicle must have a present ability to cause the hazards against which this statute attempts to protect. That hazard is a moving vehicle with an intoxicated person in control. In one older case that we find still to be a reasonable interpretation, guilt was shown when an accused caused a motor vehicle, which was temporarily inoperable because its engine was flooded, roll down a driveway to a public highway. Farley v. State, 251 Miss. 497, 170 So.2d 625, 626 (1965). The dangers inherent in allowing gravity to cause the vehicle to move are just as great if shorter-term as when the motor is running, the vehicle is in gear, and the defendant's foot is on the gas pedal.
¶ 12. The officer who discovered Lewis testified that during the entire episode of initial questioning at the vehicle through administering of the various sobriety tests, and finally his being processed at the police station, Lewis did not mention that someone else had been driving. The fact that an intoxicated Lewis was found behind the wheel of this vehicle, with no one else present nor even mentioned, would have allowed an inference that Lewis was the one who had been driving and did so while in that condition.[1] Another jury instruction allowed conviction if the jury inferred those facts from the evidence, since guilt was to be found if jurors believed beyond a reasonable doubt that Lewis had "unlawfully, willfully and feloniously drive[n]" the vehicle that night while having an illegally high concentration of alcohol on his blood.
¶ 13. What instruction 4A permitted by defining "operate" in this fashion was a finding of guilt simply because Lewis while intoxicated was behind the wheel "and in full control of the motor vehicle." The explanation that Lewis gave was that he had not been driving, that his friend Willie Brooks was driving when the vehicle stopped because it was out of fuel, and that as Brooks went to get gasoline Lewis slid behind the wheel and went to sleep. That explanation was corroborated by Brooks's testimony. The jury could have rejected the story and found that Lewis had actually driven the vehicle while under the influence. However, with this definition of "operate," jurors did not even need to consider reasonable doubts about whether Lewis had driven the car. It was enough that he was behind the wheel and "in control" when discovered.
¶ 14. We are not certain what jurors would have considered the phrase "in full control of the vehicle" to mean. Is anyone in control of an automobile that is out of gas and cannot be rolled down a hill? One interpretation of that phrase is that a person inside a vehicle that has no gasoline and with no other ready means for the person to make it move, is not in control. If this is "control," it is extremely feeble. Such a situation is no different than if an intoxicated person is inside a vehicle on flat ground without the keys, and he does not know how to start it in other ways. However, we do not find that jurors would necessarily or even likely have define "control" *558 as requiring a present ability to make a vehicle move. They might have determined that the sole occupant of a vehicle who has the keys is necessarily in control.
¶ 15. As to proof, none was offered by the State as to whether there was any gasoline in the vehicle; whether it was on a hill was also not the subject of proof.
¶ 16. Lewis's defense was that he had not been driving, was not intending to drive, and in fact could not drive the vehicle because it was out of gas. On the one hand, there was evidence from which jurors could infer that he had been driving and had stopped before he was found by police. However, we find that this instruction also could have led to conviction even had jurors believed the story that he had not driven at all that evening, that the vehicle had no gasoline in it, and that Lewis had only slid behind the wheel after Brooks left. That is an overly broad interpretation of the crime.
¶ 17. Being intoxicated and being at the wheel of a parked motor vehicle with the motor off do not by themselves form sufficient facts for conviction for driving under the influence. This would mean that a person who becomes intoxicated outside of his vehicle and then returns to "sleep it off" is guilty of operating under the influence if he chooses the driver's seat for his sleep. We find no precedent interpreting this statute that makes the mere potential that an intoxicated person may decide at some time to start the engine and start driving is adequate to prove the offense.
¶ 18. We hold that to be guilty of driving or operating a motor vehicle while under the influence of drugs or alcohol, or with an illegally high blood-alcohol content, the person must be shown by direct proof or reasonable inferences to have driven the vehicle while in that condition, or as in Jones to be "operating" the vehicle while sitting behind the wheel, in control with the motor running. Reasonable doubt need not be removed about whether the defendant had actually driven the vehicle prior to his discovery. Proof of the imminence of such driving by being the "operator" of a vehicle that has its motor running is itself an offense even if the offender has yet to move the vehicle.
¶ 19. Driving under the influence is a serious crime with serious risks to the public. It may often be difficult to catch an offender in the act. He or she may be discovered only after causing a horrendous accident or perhaps, as alleged by the State here, only after the intoxication causes the driver to stop for awhile. In order to avoid the former harm we do not believe that we have the authority to relax the proof necessary to convict in the latter instance. Perhaps intoxicated individuals in vehicles for whom no proof exists of past act or future intent to move the vehicle should be guilty of some offense, such as public intoxication if the vehicle is in a public place. Miss.Code Ann. § 97-29-47 (Rev.2000). Being found alone in a vehicle alongside the road, even when an excuse is later offered, may be sufficient to infer past driving. If the motor is running, the separate element of operating the vehicle is proven. We find it error, though, to give jurors an instruction that being behind the wheel of a stopped motor vehicle that does not have its motor running is by itself sufficient for the driving or operating element. The extra element of being in control of the vehicle is too ambiguous to give the jury useful direction.
¶ 20. We find that sufficient evidence of the crime was offered by the State. We are in agreement with the dissent on that point, based on the evidence mentioned here and other evidence in the record. Adequacy of the instruction that guided the jurors' fact-finding, not sufficiency of *559 evidence, is the problem. We reverse and remand for a new trial or other resolution.

3. Denial of circumstantial evidence instruction.
¶ 21. Lewis's third argument is based upon the trial court's refusal to grant a circumstantial evidence instruction as requested. Lewis had requested four circumstantial evidence instructions. It is true, as Lewis asserts, that where the evidence against an accused is wholly circumstantial, a circumstantial evidence instruction must be given. Windham v. State, 602 So.2d 798, 800 (Miss.1992). This is not such a case.
¶ 22. In order to prove a case of third-offense felony DUI, the State at the time of these events had to establish that the defendant was driving or operating a vehicle and either under the influence of an intoxicating liquor or had a blood alcohol content of at least 0.10%. Miss.Code Ann. § 63-11-30(1)(a) and (c). Additionally, the state must prove the defendant had been twice convicted of DUI within the previous five years. Weaver v. State, 713 So.2d 860, 865 (Miss.1997). Had the state offered circumstantial evidence to establish all of these elements, Lewis would have been entitled to a circumstantial evidence instruction.
¶ 23. However, the State did provide direct evidence of at least two of these elements. The State submitted laboratory results showing Lewis's blood alcohol content was 0.30%. This is direct evidence of the intoxication element of the crime. In addition, Lewis made incriminating admissions. Without referring to any other driver, he told the arresting officer that he had run out of gas. Lewis said that he had been trying to get to his hotel. Though these statements do not constitute a confession and left sufficient room for his later explanation that Brooks had been the driver, still these are "facts pertinent to the issue and tending in connection with other facts to prove his guilt." Mack v. State, 481 So.2d 793, 795 (Miss.1985).
¶ 24. The trial court did not err in refusing the request for a circumstantial evidence instruction.

4. Admission of documentary evidence of a prior conviction
¶ 25. The final point of error raised is that the trial court improperly admitted into evidence a facsimile copy of a prior DUI conviction. Since the issue might recur if there is a new trial, we address it. The State had offered into evidence an abstract of court records from the City of Jackson Department of Administration showing Lewis had pled guilty to a second offense DUI. The record was signed by the Administrator, certifying it as a true copy. However, Lewis objected to admission of the record on the ground that it was not a properly self-authenticating record under M.R.E. 902 for lack of a seal. The court sustained this objection. The State later offered into evidence a facsimile of the abstract now purporting to bear the proper seal.
¶ 26. Again, Lewis objected to the admission of the document on the ground that a facsimile copy did not properly bear a seal and because the purported seal was so blurred in transmission as to be unrecognizable. The trial court overruled this objection and admitted the record into evidence.
¶ 27. The admissibility of evidence lies within the discretion of the trial court. Peterson v. State, 671 So.2d 647, 655 (Miss.1996). We will not disturb the trial court's ruling unless that court utilized an improper legal standard in determining admissibility such that admission resulted in an abuse of discretion resulting *560 in prejudice to the defendant. Id. at 655-56.
¶ 28. The State sought to introduce a copy of a public record, purportedly under seal. Public records under seal are admissible under Mississippi Rule of Evidence 902(1). Copies of documents, however, are governed by Rule 1003, which provides for admissibility of duplicates to the same extent as an original unless (1) there is a genuine question raised as to the authenticity of the original or (2) in the circumstances it would be unfair to admit the duplicate in lieu of the original. A duplicate is an accurate reproduction of an original document. M.R.E. 1001(4). If the duplicate satisfies the authentication requirements of Rule 901 or 902, it will be admissible.
¶ 29. Under Rule 902(1), a domestic public document under seal is self-authenticating, requiring no further authentication to be admissible into evidence. There is no doubt that the record submitted is a copy of a public document. The only question for resolution is whether the admission of a facsimile copy was proper. Facsimiles are accurate reproductions of an original document, thus satisfying the requirement of Rule 1001(4) to be a duplicate for evidentiary purposes. The original document appeared to bear a proper State seal and signed attestation by the City of Jackson administrator. The facsimile bore a copy of the seal, albeit poorly reproduced in transmission. However, the trial court found that the copy was sufficient to satisfy the authentication requirements of Rule 902(1), a decision within the trial court's discretionary domain. The fact that this was a facsimile is proved by the receiving machine's printing of the time of receipt on the document.
¶ 30. On appeal, Lewis makes no allegation that the record is not authentic. Rather, he relies upon the fact that the document presented did not bear a raised impression and thus was not actually a document under seal. Such is not required by Rule 1003. A photocopy of a record with an original seal or a facsimile copy are equally admissible, absent the problems of genuine doubt about authenticity or some point of unfairness. M.R.E. 1003. The decision was not clearly erroneous.
¶ 31. THE JUDGMENT OF THE CIRCUIT COURT OF HARRISON COUNTY IS REVERSED AND THE CAUSE IS REMANDED FOR PROCEEDINGS CONSISTENT WITH THIS OPINION. COSTS OF THIS APPEAL ARE ASSESSED TO HARRISON COUNTY.
McMILLIN, C.J., KING, P.J., THOMAS, IRVING, AND CHANDLER, JJ., CONCUR. MYERS, J., CONCURS IN PART AND DISSENTS IN PART WITH SEPARATE WRITTEN OPINION JOINED BY BRIDGES, LEE, AND BRANTLEY, JJ.
MYERS, J., concurring in part, dissenting in part.
¶ 32. "In vino veritas. With wine comes truth." The New International Dictionary of Quotations 3rd Edition 7 (Margaret Miner & Hugh Rawson eds., 2000) (anonymous proverb traced to Greek sources). Just not in this case.
¶ 33. Respectfully, I dissent from the majority's holding that the instruction defining what it meant to operate a vehicle constitutes reversible error. I have also reviewed the record and have discovered that there are additional facts not mentioned in the majority's opinion that support the jury's guilty verdict and that these facts could lead a jury to reasonably infer that Lewis was operating the Jeep. Therefore, I think that the majority erred *561 in finding that Lewis did not "operate" the Jeep.
¶ 34. The crux of the majority's opinion hinges on what is the definition of the term "operate" as found in Miss.Code Ann. § 63-11-30(1). The statute makes it "unlawful for any person to drive or otherwise operate a vehicle within this state" if intoxicated. Miss.Code Ann. § 63-11-30(1) (Rev.1996). I think, and I do not believe that the majority would disagree, that "drive" and "operate" are two separate terms and must have two separate meanings.
¶ 35. The instruction in question defines the term "operate" as not limited to the actual driving of a motor vehicle but includes the situation when a person is behind the wheel of such vehicle and in full control of it. The instruction closed by stating that this was a factual question to be resolved by the jury.
¶ 36. In Jones v. State, 461 So.2d 686, 695 (Miss.1984), the supreme court said that a person is operating a vehicle if he is sitting behind the wheel of an automobile, in full control of such, where the engine is running and the vehicle is situated on a public road. A similar case, Farley v. State, 251 Miss. 497, 170 So.2d 625, 626 (1965), seemed to define "operate" as when the engine has flooded in a car, rendering it incapable of self-movement, yet the defendant causes the car to roll down a hill. In deciding Farley, the supreme court cited State v. Storrs, 105 Vt. 180, 163 A. 560 (1933), a case in which mere turning on of the ignition switch constituted operation of a car even though the motor was defective and could not have been started. The majority seems to take the position that one must be in a situation that at any second, vehicular movement is possible, whether or not the person was in the act of causing the vehicle to move, to meet the definition of "operate."
¶ 37. A review of how the term "operate" is used in the Mississippi Code should be conducted. Mississippi's Implied Consent law contains no definition of the term "operate." The term "operator" is defined however as "any person in actual physical control of a motor vehicle...." Miss.Code Ann. § 63-1-3(c) (Rev.1996) (emphasis added). While this definition is found in the driver's license section of the Mississippi Code, it is apparent that the terms "operate" and "operator" appear throughout Title 63 of the Mississippi Code and are used in similar if not the same context. An example of a section that the definition of "operator" is applicable to is found in Miss.Code Ann. § 63-1-5. It reads that "[n]o person shall drive or operate a motor vehicle other than a motorcycle upon the highways of the State of Mississippi...." Grade school language classes and common sense tell you that an "operator" is one who "operates."
¶ 38. Miss.Code Ann. § 63-11-5(1) authorizes an officer to conduct a DUI test if "such officer has reasonable grounds and probable cause to believe that the person was driving or had under his actual physical control a motor vehicle upon the public streets or highways of this state while under the influence of intoxicating liquor...." (emphasis added). Therefore, I believe the term "operate" found in Miss. Code Ann. § 63-11-30(1) means actual physical control of a motor vehicle and does not require a person to have the present physical ability to move the vehicle.
¶ 39. I include the following crucial facts. Officer Johnson had passed by the area where the Jeep was parked ten minutes prior and no vehicle was parked there at that time. Officers routinely cross the intersection near where the Jeep was parked going to and from the police station for a midnight shift briefing. Testimony *562 was presented that officers passed by that area only a couple of minutes prior to Officer Johnson and no officer reported any parked Jeep prior to Officer Johnson. Lewis exited from the driver's side, told Officer Johnson that he had run out of gas, then re-entered the Jeep from the driver's side when Officer Johnson was going to attempt to push the Jeep to the side of the road. The keys to the Jeep belonged to Lewis and were in the ignition of the Jeep.
¶ 40. Willie Brooks, the friend that Lewis claims was actually driving, was a poor witness. During the redirect examination, the following exchange occurred.
Q. Mr. Brooks, did you and Mr. Lewis get together and cook up this story to get him out of trouble? Did y'all invent this? Did y'all make this up?
A. I ain't going to say we did.
THE COURT: Excuse me?
A. I don't think we did. No.
¶ 41. Brooks testified that he was not sober the day of the incident and had been driving the Jeep that day. He testified that when the Jeep ran out of gas, he went walking to find gas and to call his sister. He testified that he did not find any gas, talk to his sister, or have any contact with a person that could substantiate his story. The majority leaves out these facts and also the fact that Brooks began walking in a direction away from where he knew there were gas stations.
¶ 42. Additionally, Brooks did not remember what day the incident occurred nor exactly where it occurred. Brooks also testified that similar incidents of the two of them drinking, driving and running out of gas may have occurred.
¶ 43. As the majority points out, there was also an additional instruction that dealt with driving. I understand the majority's statement that the instruction in question could lead to a conviction even if jurors had believed the defendant's version of the events. If the jury believed the defendant's version of events, a jury could reasonably infer that at the time Officer Johnson appeared, Lewis was in full control of the Jeep at that time even though Lewis had not driven the Jeep all night. It is important to remember that Lewis was the only one around the Jeep, Lewis had the keys to the Jeep in the ignition, and that Lewis attempted to maneuver the vehicle when Officer Johnson tried to push it onto the side of the road. It is because of this that I dissent from the majority opinion.
BRIDGES, LEE AND BRANTLEY, JJ., JOIN THIS SEPARATE OPINION.
NOTES
[1] Had Lewis been given warnings regarding self-incrimination and his right to counsel and then remained silent, his failure to give any explanation might not have been admissible. Carr v. State, 655 So.2d 824, 844-45 (Miss.1995). Constitutionally warned detainees who are silent cannot have their silence used against them. Here, what is relevant is that Lewis did talk and did not think to mention that someone else had been driving.