972 So.2d 674 (2007)
Adrian TRAVIS a/k/a Adrien Travis, Appellant
v.
STATE of Mississippi, Appellee.
No. 2004-KA-00097-COA.
Court of Appeals of Mississippi.
May 15, 2007.
Rehearing Denied October 2, 2007.
*676 Julie Ann Epps, Michael V. Ward, Canton, attorneys for appellant.
Office of the Attorney General by Deirdre McCrory, attorney for appellee.
EN BANC.
ROBERTS, J., for the Court.

SUMMARY OF THE CASE
¶ 1. On September 15, 2003, a jury sitting before the Madison County Circuit Court found Adrian Travis guilty of DUI homicide, in violation of Sections 63-11-30(1)(c) and 63-11-30(5) of the Mississippi Code Annotated (Rev.2004). On October 17, 2003, the circuit court sentenced Travis to a twenty-five year sentence with fifteen years suspended and ten years to serve. The circuit court also sentenced Travis to five years of supervised probation. Following unsuccessful motions for JNOV or, alternatively, for a new trial, Travis appeals. Travis raises three issues, listed verbatim:
I. TRAVIS'S CONVICTION MUST BE REVERSED BECAUSE THE EVIDENCE IS INSUFFICIENT AS A MATTER OF LAW TO SHOW THAT HE IS GUILTY.
II. THE TRIAL COURT COMMITTED REVERSIBLE ERROR IN ADMITTING TESTIMONY FROM OFFICER HENDERSON THAT BASED ON HIS INVESTIGATION HE BELIEVED TRAVIS HAD BEEN DRIVING THE CAR.
III. THE PROSECUTION'S ARGUMENT AND ATTEMPTS TO INTRODUCE INADMISSIBLE EVIDENCE OF TRAVIS'S SILENCE VIOLATED TRAVIS'S DUE PROCESS RIGHTS AGAINST SELF-INCRIMINATION AND TO A FAIR TRIAL UNDER THE FEDERAL AND STATE CONSTITUTIONS.
Finding no error, we affirm.

FACTS
¶ 2. The events that led to Travis's appeal originated from a fatal traffic accident that occurred during the late night of February 6, 1999, or the early morning hours of February 7, 1999. At any rate, at approximately 2:05 a.m., on February 7, 1999, Sergeant George Henderson of the Mississippi Highway Patrol received a call regarding an automobile accident at the intersection of Highway 51 and Davis Road just north of Canton in Madison County, Mississippi. Sergeant Henderson responded and arrived at the scene of the accident at 2:20 a.m. and found a two-vehicle accident. Sergeant Henderson was not the first responder at the scene, as a number of emergency responders were already there when he arrived.
¶ 3. Sergeant Henderson found a man lying in the intersection. Another man stood near the intersection. Sergeant Henderson discovered that the man lying in the intersection had no pulse. The deceased *677 was later identified as Milton Garrett. The man near the intersection was Adrian Travis. Sergeant Henderson found Travis confused and disoriented.
¶ 4. Travis told Sergeant Henderson that "he couldn't remember" what happened. According to Travis, he "was going to his girlfriend's house" and he could not remember from where he was coming. That is, Travis could not remember where he had been earlier that evening. Sergeant Henderson was concerned that Travis had suffered some form of head trauma, but Travis had no scratches, cuts, or bruises. Sergeant Henderson placed Travis in the back seat of his patrol car, but he did not handcuff Travis. However, in the process, Sergeant Henderson smelled alcohol on Travis.
¶ 5. Sergeant Henderson completed his investigation while Travis remained in his patrol car. Sergeant Henderson found no eyewitnesses to the collision. Later, Sergeant Henderson drove Travis to the station, informed Travis of his Miranda rights, and conducted an Intoxilyzer test on Travis. According to the Intoxilyzer report, Travis had a blood alcohol content of .14%, while the legal limit is .08%.
¶ 6. Sergeant Henderson's subsequent investigation revealed that Milton Garrett owned one car and that the other car was registered to a man named Eddie Winston. Neither car was registered to Travis. Sergeant Henderson did not contact Eddie Winston to determine just how his vehicle ended up involved in the collision.
¶ 7. Dr. Steven Hayne, a forensic pathologist, conducted an autopsy on Garrett. Dr. Hayne concluded that Garrett died as a result of the automobile accident. Dr. Hayne also found that the cause of Garrett's death was damage to his heart, lungs, liver, and spleen.
¶ 8. Sergeant Cecilia Kazery, an accident reconstructionist with the Mississippi Highway Patrol, determined that as Garrett proceeded north in the right lane of Highway 51, the second car ran the stop sign and "t-boned" the side of Garrett's vehicle. Sergeant Kazery did not determine the rate of speed at which the cars were traveling at the time of the collision. Sergeant Kazery did not determine the speeds of the cars for two reasons. For one, when the cars were removed from the scene of the accident, the tow truck had to manipulate Garrett's vehicle. In the process, the tow truck operator made it impossible for her to conduct the necessary tests based on the impact to the car. Second, after the collision, the cars came to rest against an embankment. That embankment stopped the progress of the cars. Accordingly, Sergeant Kazery could estimate as to a range of speed, but she could not determine a precise or accurate rate of speed.
¶ 9. However, Sergeant Kazery was able to conclude that, despite having a blood alcohol content of .18%, Garrett was traveling in the proper lane of traffic at the time of the collision. Sergeant Kazery could not conclude whether Garrett used his headlights or whether he obeyed the speed limit.

PROCEDURAL HISTORY
¶ 10. On April 28, 1999, the Madison grand jury returned an indictment against Travis and charged him with DUI homicide, in violation of Sections 63-11-30(1)(c) and 63-11-30(5) of the Mississippi Code Annotated. Travis pled "not guilty." Accordingly, the matter proceeded to trial.
¶ 11. Travis went to trial before the circuit court on September 11, 2003. The prosecution called Sergeant Henderson and Sergeant Kazery as witnesses. Additionally, the parties stipulated to the conclusions *678 in Dr. Hayne's autopsy of Garrett. At that point, the prosecution concluded its case-in-chief.
¶ 12. Subsequently, Travis's attorney made an ore tenus motion for a directed verdict. Travis then rested without calling any witnesses. The jury deliberated and found Travis guilty. On October 17, 2003, the circuit court sentenced Travis. Following unsuccessful motions for JNOV or for a new trial, Travis appeals.

ANALYSIS
I. TRAVIS'S CONVICTION MUST BE REVERSED BECAUSE THE EVIDENCE IS INSUFFICIENT AS A MATTER OF LAW TO SHOW THAT HE IS GUILTY.
¶ 13. Travis claims the circuit court erred when it overruled his motion for JNOV. Travis claims we should reverse because there was insufficient evidence to find that he actually drove the vehicle registered to Eddie Winston.
¶ 14. A motion for JNOV challenges the legal sufficiency of the evidence. Griffin v. State, 883 So.2d 1201(¶ 6) (Miss.Ct.App. 2004). We will only reverse if the evidence of one or more of the elements of the charged offense is such that, considered in the light most favorable to the prosecution, reasonable and fair-minded jurors could only find the accused not guilty. Id. In testing the sufficiency of the evidence to substantiate a verdict, we are required to accept as true all the evidence favorable to the verdict as well as all reasonable inferences favorable to the verdict. E.g., Smith v. State, 907 So.2d 292(¶ 33) (Miss.2005). Based on our standard of review, we must find that reasonable and fair-minded jurors exercising sound judgment could have logically concluded that Travis was guilty.
¶ 15. The jury found Travis guilty of "operating a motor vehicle negligently while legally intoxicated" in violation of Mississippi Code Annotated §§ 63-11-30(1)(c) and (5) (Rev.2004). "[T]o be guilty of driving or operating a motor vehicle . . . with an illegally high blood alcohol content, the person must be shown by direct proof or reasonable inferences to have driven the vehicle while in that condition." Lewis v. State, 831 So.2d 553(¶ 18) (Miss.Ct.App. 2002).
¶ 16. "A person may be arrested, tried, and convicted of operating a motor vehicle while under the influence of an intoxicating liquor even if there is no eyewitness presented who viewed the defendant operating the vehicle, provided there is sufficient evidence." Holloway v. State, 860 So.2d 1244(¶ 12) (Miss.Ct.App.2003). "Reasonable doubt need not be removed about whether the defendant had actually driven the vehicle prior to his discovery." Id. With due respect for the opinion of my colleagues, as expressed in the dissent, based on our careful review of the record, the prosecution sufficiently demonstrated, by reasonable inferences, that Travis drove the car registered to Eddie Winston.
¶ 17. The time and location of the collision allowed the jury to form a reasonable inference that Travis drove the car that hit Garrett. The collision occurred at approximately 2:00 a.m., at the intersection of Highway 51 and Davis Crossing, three to four miles north of Canton, Mississippi in Madison County. Pictures introduced into evidence show that Highway 51 and Davis Crossing are both two lane roads and are not in highly developed areas. The area can accurately be described as rural. There were no sidewalks and there was nothing to indicate the presence of pedestrian traffic. The jury could have found it unlikely that Travis would have been walking in that area at that time of the morning. *679 Accordingly, the jury could have reasonably inferred that Travis was at the scene of the collision because he drove one of the two cars involved in the collision.
¶ 18. Other pictures introduced into evidence showed the vehicles involved in the collision. Based on the condition of the two vehicles, the collision could fairly be described as severe. The jury could have found that a participant in that collision would not have been able to leave the scene of the accident. Thus, the jury could have inferred that Travis's presence at the scene indicated that he was involved in the collision in some manner.
¶ 19. Further, there were two cars involved. Both were located off the highway in a nearby ditch. Garrett, the victim, was the registered owner of one of the two cars. There was only one other car involved. There was only one other person at the scene who was not an emergency responder or a law enforcement officer. The jury could reasonably conclude that Travis was driving the only car that was not registered to the only other person at the scene. When Sergeant Henderson arrived at the scene of the accident shortly after he was dispatched, he found emergency responders, one deputy, and two civilians. One of those civilians was Garrett, the victim. Garrett was lying dead in the middle of Highway 51 when Sergeant Henderson arrived. Travis was the only living person present who was not an emergency responder. The jury could have found that Travis's proximity and his status as the sole non-emergency personnel present indicated his involvement in the collision.
¶ 20. Sergeant Henderson testified that, when he arrived at the scene, emergency personnel were tending to Travis. The jury could have reasonably inferred that, by needing some degree of medical assistance, Travis had been involved in that accident. What is more, Sergeant Henderson opined that he thought Travis had some form of head trauma. The picture of the vehicle that struck Garrett shows a large "spiderweb" section of the windshield in front of the driver's seat. A reasonable juror could have concluded that the driver of that car hit the windshield with his head. By the same logic, a reasonable juror could have concluded that Sergeant Henderson's testimony regarding the possibility that Travis suffered from head trauma was corroborated by the presence of the broken windshield. Additionally, Sergeant Henderson testified that Travis was in a "dazed," "lost," or "confused" mental state. The jury could have inferred that Travis was in that mental state as a result of his being involved in the collision and having struck his head on the windshield.
¶ 21. According to Sergeant Henderson, Travis stated that he was in transition between some unknown point and his girlfriend's house. Specifically, Travis told Sergeant Henderson that "he was on his way to his girlfriend's house." Travis did not indicate that he was on foot or that he left from some place nearby or that he was on his way to some place nearby. The jury certainly could have concluded that Travis was not on foot at that time of the morning in a remote area.
¶ 22. Statements by Travis to Sergeant Henderson supported the jury's decision. Travis told Sergeant Henderson that he could not "remember" how the collision happened. Travis did not state that he did not know how the collision occurred. The jury could have concluded that Travis was involved in the accident. That is, there is a difference between happening upon an accident that had already occurred and being unaware of how it occurred, versus being involved in a collision and not remembering how the collision occurred.
*680 ¶ 23. Sergeant Henderson tested Travis to see if Travis had been driving under the influence. On redirect, Sergeant Henderson testified that Travis never said he was not driving or that someone else was driving. Travis never told Sergeant Henderson that he was on foot. Travis also never mentioned anyone else who could have possibly been driving. While this does not demonstrate that Travis had been driving, it is certainly evidence that Sergeant Henderson was of the opinion that Travis had been driving.
¶ 24. Sergeant Henderson was absolutely of the opinion that Travis drove the car that struck Garrett. He testified that Travis drove the car that was not registered to Garrett. Additionally, the prosecutor asked Sergeant Henderson whether Travis indicated which car he had been driving. Sergeant Henderson testified that "[i]t seems like [Travis] did." A rational juror could conclude that Travis had been driving one of the two cars. "It [is] within the jury's province to draw reasonable inferences from the evidence based on their experience and common sense." Broomfield v. State, 878 So.2d 207(¶ 30) (Miss.Ct.App.2004). On cross-examination, Travis's attorney asked Sergeant Henderson what caused him to conclude that Travis drove the other car. Sergeant Henderson testified that he concluded that Travis was driving based on Travis's presence, the presence of emergency responders, and "common sense." The Mississippi Rules of Evidence permit Sergeant Henderson's opinion and inference testimony because his testimony was "(a) rationally based on the perception of the witness, (b) helpful to the clear understanding of testimony or the determination of a fact in issue, and (c) not based on scientific, technical, or other specialized knowledge within the scope of Rule 702." M.R.E. 701; Christian v. State, 859 So.2d 1068(¶ 7) (Miss.Ct.App.2003).
¶ 25. While reviewing challenges to the sufficiency of the evidence, we must consider the evidence in the light most consistent with the verdict. Jordan v. State, 936 So.2d 368(¶ 24) (Miss.Ct.App. 2005). In the context of an appeal of a criminal conviction, we give the State the benefit of all favorable inferences that may reasonably be drawn from the evidence. Id. If we conclude that reasonable jurors could not have found beyond a reasonable doubt that Travis was guilty, then we must reverse Travis's conviction. Id. Otherwise, we must affirm. Id.
¶ 26. The circuit court instructed the jury that it was "permitted to draw such reasonable inferences from the evidence as seem justified in the light of [their] own experience." The jury heard ample evidence to form a reasonable and permissible inference that Travis was guilty. While there was no eyewitness testimony that Travis, in fact, drove the car that hit Garrett, there was sufficient circumstantial evidence to convict Travis. "Our system of justice allows the jury to make logical and reasonable inferences and presumptions." Broomfield, 878 So.2d at 215(¶ 31). As was his constitutional right, Travis did not testify nor did he call a single witness in defense of the charge laid in the indictment. Based on the totality of the circumstances detailed at trial, a juror would have had to rely on speculation and conjecture to arrive at the conclusion that Travis was not the driver of the car that hit Garrett. "We will affirm if any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt and excluding every reasonable hypothesis consistent with innocence." Dunaway v. State, 919 So.2d 67(¶ 9) (Miss.Ct.App.2005) (internal quotations omitted). "Moreover, a mere *681 fanciful or farfetched or unreasonable hypothesis of innocence is not sufficient to require an acquittal." Id. (internal quotations omitted). The jury could only have found Travis not guilty by just such a fanciful, farfetched or unreasonable hypothesis of innocence. Accordingly, we affirm.
II. THE TRIAL COURT COMMITTED REVERSIBLE ERROR IN ADMITTING TESTIMONY FROM OFFICER HENDERSON THAT BASED ON HIS INVESTIGATION HE BELIEVED TRAVIS HAD BEEN DRIVING THE CAR.
¶ 27. In his second issue, Travis suggests that the circuit court erred when it allowed Sergeant Henderson to testify as to his opinion that Travis drove the car registered to Winston. We review a circuit court's decision to admit evidence pursuant to our familiar abuse of discretion standard. Burton v. State, 875 So.2d 1120(¶ 6) (Miss.Ct.App.2004). We will find an abuse of discretion where a defendant shows clear prejudice resulting from an undue lack of constraint on the prosecution or undue constraint on the defense. Id. We will not disturb the circuit court's decision unless it is clearly wrong. Id.
¶ 28. During direct examination, the prosecution asked Sergeant Henderson whether he determined who had been driving the two cars. Sergeant Henderson testified that Garrett drove one car. Sergeant Henderson also testified that Travis drove the car registered to Winston. The prosecution attempted to ask Sergeant Henderson, "where did you get that information, sir?" At that point, counsel for Travis objected on the basis of hearsay. The circuit court sustained Travis's objection. Still, Sergeant Henderson testified, without objection, that Travis drove the car registered to Winston.
¶ 29. Later during direct examination, Sergeant Henderson testified that Travis never denied driving the car registered to Winston. However, Travis objected and the circuit court sustained Travis's objection. During cross-examination, Sergeant Henderson testified that he did not see Travis operate a vehicle at the time of the collision. Similarly, Sergeant Henderson testified that no witnesses told him that they saw Travis operate a vehicle at the time of the collision.
¶ 30. On redirect, the prosecution asked Sergeant Henderson "who is driving the car shown in State's Exhibit 3?" At that point, counsel for Travis objected and argued that the prosecution had failed to lay a foundation for the question. The circuit court conducted a side-bar conference. After counsel presented their respective arguments, the circuit court found:
[Sergeant Henderson] answered yes [on direct examination], when asked was this the car the Defendant was driving, or however the question was phrased. And there was no contemporaneous objection at that time. If there had been, then a foundation would have certainly been required. From a practical standpoint, usually there are no objections made to that type of question. I guess because it's presented that the witness has some basis for knowing or a basis of knowledge. Then, it comes out on cross that nobody told him. He didn't see him. The Defendant didn't tell him. So, I think that before that question is re-asked that there ought to be some further foundation for it. So, sustained, denied, and just, you know, establish a foundation. And you can ask the Defendant to challenge the points made on cross. I think at this point you'd have to establish some sort of further evidentiary basis and foundation.
*682 ¶ 31. Following the circuit court's ruling, Sergeant Henderson apparently began to again testify that Travis drove Winston's car. The circuit court instructed the prosecution that it would have to establish a foundation. The prosecution then questioned Sergeant Henderson regarding Travis's presence at the scene of the collision, Travis's statement that he "didn't remember" how the accident occurred, Travis's destination, Travis's inability to remember from where he came, the fact that Sergeant Henderson gave Travis an Intoxilyzer test, that Travis never claimed that he was not driving Winston's car, that he informed Travis that he was being charged with DUI, and that, aside from emergency personnel, Travis was the only living person at the scene.
¶ 32. At that point, the prosecution asked Sergeant Henderson, "were you able to conclude who was driving the vehicle depicted in State's Exhibit No. 3?" Counsel for Travis stated, "Same objection, Your Honor." The circuit court overruled Travis's objection and Sergeant Henderson testified that Travis had been driving. Eventually, the prosecution asked Sergeant Henderson again whether he knew who drove the car that collided into Garrett. Again, Sergeant Henderson testified, over objection, that Travis drove that car.
¶ 33. On appeal, Travis argues that the prosecution failed to establish a foundation. Travis also claims that Sergeant Henderson's testimony was not admissible as a lay opinion. The admissibility of lay witness opinion testimony is determined by a two part test under M.R.E. 701 and M.R.E. 602. Pursuant to M.R.E. 602, "[a] witness may not testify to a matter unless evidence is introduced sufficient to support a finding that he has personal knowledge of the matter." As for the admissibility of Sergeant Henderson's opinion and inference testimony, it is admissible if it was "(a) rationally based on the perception of the witness, (b) helpful to the clear understanding of testimony or the determination of a fact in issue, and (c) not based on scientific, technical, or other specialized knowledge within the scope of Rule 702." M.R.E. 701; Christian v. State, 859 So.2d 1068(¶ 7) (Miss.Ct.App.2003).
¶ 34. It is important to note that, during direct examination, Sergeant Henderson testified that Travis drove Garrett's car. Counsel for Travis did not object or otherwise challenge Sergeant Henderson's initial testimony. Consequently, the procedural bar operates, and this issue is deemed waived. Gary v. State, 796 So.2d 1054(¶ 6) (Miss.Ct.App. 2001). Accordingly, even if we found that the circuit court erred when it allowed Sergeant Henderson to testify, on redirect, that Travis drove Winston's car, we could not find that Sergeant Henderson's redirect testimony prejudiced Travis because Sergeant Henderson testified to the same thing, without objection, during his direct testimony.
¶ 35. Further, Sergeant Henderson's testimony was based on his personal knowledge. Sergeant Henderson personally observed numerous facts and circumstances at the scene of the accident. Based on those personal observations, Sergeant Henderson formed his opinion that Travis operated Winston's vehicle. Additionally, the prosecution asked Sergeant Henderson whether Travis indicated which car he had been driving. Sergeant Henderson testified that "[i]t seems like [Travis] did." A rational juror could conclude that Travis had been driving one of the two cars. On cross-examination, Travis's attorney asked Sergeant Henderson what caused him to conclude that Travis drove the other car. Sergeant Henderson testified that he concluded that Travis was driving based on Travis's presence, the *683 presence of emergency responders, and "common sense." All things considered, we cannot find that the circuit court abused its discretion, particularly where the substance of the testimony at issue went before the jury without objection.
III. THE PROSECUTION'S ARGUMENT AND ATTEMPTS TO INTRODUCE INADMISSIBLE EVIDENCE OF TRAVIS'S SILENCE VIOLATED TRAVIS'S DUE PROCESS RIGHTS AGAINST SELF-INCRIMINATION AND TO A FAIR TRIAL UNDER THE FEDERAL AND STATE CONSTITUTIONS.
¶ 36. Here, Travis claims the prosecution improperly argued that, at the scene of the accident and during the investigation that followed, Travis's failure to state that he did not drive the car at the scene was evidence that Travis actually did drive the car at the scene. According to Travis, that evidence was inadmissible for two reasons: "(1) there is no evidence that anyone ever accused Travis of the crime under circumstances so that there is in fact no admissible `admission by silence'" and "(2) evidence of a defendant's silence after Miranda warnings is not admissible." The standard of review announced in issue two, above, applies here. For brevity's sake, we will not repeat it. Suffice it to say, we review under the familiar abuse of discretion standard.
¶ 37. The first time the prosecution asked Sergeant Henderson, "Did [Travis] ever deny driving?" Counsel for Travis objected, the circuit court sustained the objection, and Travis did not request any further relief. Where a circuit court sustains an objection and a party does not ask the circuit court to instruct the jury to disregard the objectionable matter, there is no error. Perry v. State, 637 So.2d 871, 874 (Miss.1994). Said differently, when a defendant received the relief he requested, the defendant has no basis to complain on appeal. Broomfield, 878 So.2d at 221(¶ 57).
¶ 38. On redirect, the prosecution asked Sergeant Henderson whether Travis ever told him that someone else had been driving. Sergeant Henderson answered, "No sir. He did not." Counsel for Travis did not object. We will not find that a circuit court erred when it declined to grant relief that was not requested. That is, Travis cannot complain about testimony to which he did not object. Roberson v. State, 595 So.2d 1310, 1315 (Miss.1992).
¶ 39. During closing arguments, the prosecution stated, "[W]hen Sergeant Henderson approaches [Travis], walks up to him to find out how this accident happened, you didn't hear Henderson testify that Travis told him somebody else was driving. You would expect that." Counsel for Travis objected. The circuit court sustained the objection. Counsel for Travis did not request any further relief. As mentioned above, this statement cannot serve as the basis for reversible error, as Travis received the exact relief he requested. Similarly, after Travis's attorney presented his closing argument, the prosecution had an opportunity to rebut. During rebuttal, counsel for Travis objected to a similar argument. Again, the circuit court sustained the objection. Counsel for Travis did not ask the circuit court to admonish the jury to disregard the argument. Likewise, Travis's attorney did not request a mistrial. Regardless, the jury instructions directed the jury that it was to "disregard all evidence which was excluded by the Court from consideration during the course of the trial." "[T]he law presumes the jury is competent and follows the instructions they are given." Curry v. State, 939 So.2d 785(¶ 17) (Miss.2006). Because Travis received the relief he requested, and did not object to a separate instance, *684 we cannot find reversible error. As such, we affirm.
¶ 40. THE JUDGMENT OF THE MADISON COUNTY CIRCUIT COURT OF CONVICTION OF DUI HOMICIDE AND SENTENCE OF TWENTY-FIVE YEARS IN THE CUSTODY OF THE MISSISSIPPI DEPARTMENT OF CORRECTIONS, WITH FIFTEEN YEARS SUSPENDED, TEN TO SERVE AND FIVE YEARS OF SUPERVISED PROBATION IS AFFIRMED. ALL COSTS OF THIS APPEAL ARE ASSESSED TO THE APPELLANT.
MYERS, P.J., GRIFFIS, BARNES, ISHEE AND CARLTON, JJ., CONCUR. KING, C.J., DISSENTS WITH SEPARATE WRITTEN OPINION, JOINED BY LEE, P.J., IRVING AND CHANDLER, JJ.
KING, C.J., Dissenting.
¶41. Because I find that the evidence is not legally sufficient to support the inferences suggested by the majority, I respectfully dissent.

FACTS
¶ 42. On February 7, 1999, at approximately 2:05 a.m., Sergeant George Henderson of the Mississippi Highway Patrol received a call regarding an automobile accident at the intersection of Highway 51 and Davis Road just north of Canton, Mississippi. Henderson arrived at the scene of the accident at 2:20 a.m. to find a two-vehicle accident. According to Henderson's testimony at trial, he noted several emergency workers were already there and working the scene.
¶ 43. Upon his arrival, Henderson found a man lying in the intersection and a man standing in the vicinity of the intersection. Henderson attended to the man in the intersection first to determine whether the man needed medical attention. This man was later identified as the deceased, Milton E. Garrett. Finding no pulse, Henderson turned his attention to the second man, Adrian Travis, who appeared confused and disoriented.
¶ 44. Henderson testified that Travis said that "he couldn't remember" what happened. Travis further stated that he "was going to his girlfriend's house" but could not remember where he had been earlier that evening. Henderson testified that at this point in the investigation, he was concerned that Travis might be suffering from head trauma. Henderson also testified that Travis had no injuries  no scratches, cuts, or bruises. Henderson then placed Travis in the back seat of the patrol car but did not handcuff him. Only then did Henderson detect the smell of alcohol on Travis' person.
¶ 45. Henderson testified that he completed his investigation while Travis remained in the patrol car. Henderson testified that there were no eyewitnesses to the accident. Henderson then drove Travis back to the station, where he read Travis his Miranda rights and conducted an Intoxilizer test to determine Travis' blood alcohol content. According to the Intoxilizer report, Henderson conducted the test at 3:21 a.m., and Travis registered a blood alcohol content of .14%, a reading above the legal limit of .08%.
¶ 46. Henderson's subsequent investigation revealed that the first car belonged to the deceased, but the second car was registered to Eddie Winston  not to Travis. Henderson also testified at trial that he did not contact Winston.
¶ 47. At trial, the parties stipulated to the findings of Dr. Steven Hayne, the forensic pathologist who conducted the autopsy on Milton Garrett. Dr. Hayne concluded that the immediate cause of death was the automobile accident. The underlying *685 causes of death included damage to Garrett's heart, lungs, liver, and spleen.
¶ 48. The State's only other witness was the accident reconstructionist, Cecila Kazery. She testified that Garrett was driving north on Highway 51 in the right lane. Based on the skid marks at the intersection, she concluded that the second car ran the stop sign and "t-boned" Garrett's vehicle. She did not conduct speed tests to determine how fast the cars were traveling for the following reasons: First, when the cars were removed from the scene of the accident, the tow truck had to manipulate Garrett's vehicle, rendering it impossible for her to conduct the necessary tests based on the impact to the car. Second, the cars came to rest against an embankment, which stopped the progress of the cars; therefore, while Kazery could estimate a range of speed, she could not determine the speed of the vehicles accurately because the embankment interrupted the movement of the vehicles.
¶ 49. Kazery did conclude, however, that despite his .18% blood alcohol content, Garrett was traveling in the proper lane of traffic. She could not testify, however, whether he was obeying all other traffic laws, including use of headlights and observing the speed limit.

PROCEDURAL HISTORY
¶ 50. Travis was indicted for DUI homicide, in violation of Mississippi Code Annotated Sections 63-11-30(1)(c) and 63-11-30(5), on April 28, 1999. The trial began on September 11, 2003. Following the presentation of the State's case, Travis' attorney made an ore tenus motion for a directed verdict, which the trial court denied. The defense then rested without presenting any witnesses. Following the guilty verdict, Travis filed a motion for a judgment notwithstanding the verdict or for a new trial. The trial court denied that motion, and Travis timely filed this appeal.
¶ 51. I believe that the trial court improperly admitted Sergeant Henderson's opinion testimony and that the evidence was insufficient to support the guilty verdict.

ANALYSIS
Inadmissibility of Sergeant Henderson's testimony
¶ 52. With regard to the admission or exclusion of evidence, this Court considers those issues under an abuse of discretion standard. See Watkins v. State, 910 So.2d 591, 594(¶ 14) (Miss.Ct.App.2005). In considering the admission or exclusion of evidence under that standard, this Court has held that
[w]hen we find there to have been an abuse of discretion, we still `will not reverse an erroneous admission or exclusion of evidence unless the error adversely affects a substantial right of a party.' Thus, employing this standard, we examine the trial court's ruling for abuse of discretion, and if we find an abuse of discretion we then inquire into the effect, if any, the ruling had on a substantial right of the party.
Id. at 594-95 (citations omitted).
¶ 53. Before this Court can determine whether the evidence was sufficient to support the guilty verdict, this Court must first determine whether the evidence before the jury was properly admitted. In his second point of error, Travis argues that Henderson was allowed to testify that, based upon his investigation, Travis was operating the second vehicle involved in the accident. Travis contends that the prosecutor unsuccessfully attempted to elicit testimony from Henderson that Travis was driving. Travis' objections to those attempts were sustained on the *686 grounds that the prosecutor had failed to establish a foundation for that testimony. On redirect examination, the prosecutor again attempted to elicit testimony from Henderson that Travis was driving the second vehicle. The following testimony was given:
Q: And who is driving the car shown in State's Exhibit 3?
Mr. Ward: Your Honor, I'm going to object for lack of foundation.
The Witness: Mr. Adrian Travis.
Mr. Ward: Lack of foundation.
The Court: Sustained.
¶ 54. The court then conducted a side-bar conference outside the presence of the jury. Following arguments from counsel, the Court stated as follows:
He answered yes [on direct examination], when asked was this the car the Defendant was driving, or however the question was phrased. And there was no contemporaneous objection at that time. If there had been, then a foundation would have certainly been required. From a practical standpoint, usually there are no objections made to that type of question. I guess because it's presented that the witness has some basis for knowing or a basis of knowledge. Then, it comes out on cross that nobody told him. He didn't see him. The Defendant didn't tell him. So, I think that before that question is re-asked that there ought to be some further foundation for it. . . . I think at this point you'd have to establish some sort of further evidentiary basis and foundation.
¶ 55. The prosecutor then resumed his re-direct examination. Henderson reiterated his initial testimony  that the deceased, Travis, and the emergency personnel were the only persons Henderson observed at the scene. Henderson also re-iterated his testimony on cross-examination, that Travis never admitted driving the car and that even after being advised that he would be charged with DUI Travis never denied driving the car. The following exchange then occurred:
Q: Officer Henderson, were you able to conclude who was driving the vehicle depicted in State's Exhibit No. 3?
Mr. Ward: Same objection, Your Honor.
The Court: Overruled.
The Witness: Yes, sir.
Q: And who was that?
A: Mr. Adrian Travis.
¶ 56. On appeal, Travis argues that the prosecutor failed to establish a foundation. Travis argues further that Henderson's testimony constituted an inadmissible lay opinion and that the admission of that testimony violated Travis' constitutional right to confront and cross-examine witnesses and his right to a fair trial.
¶ 57. Based upon Sergeant Henderson's limited investigation, I believe that the trial court abused its discretion in permitting Sergeant Henderson to testify that it was his opinion that Travis was operating the vehicle that struck Garrett and caused his death. The admissibility of lay witness opinion testimony is determined by "a two part test under M.R.E. 701 and M.R.E. 602. The matter testified to must be within the witnesses [sic] personal knowledge, and the testimony must be helpful to the trier of fact in resolving the issue." Bower v. Bower, 758 So.2d 405, 413(¶ 37) (Miss. 2000); Jones v. State, 678 So.2d 707, 710 (Miss.1996).
¶ 58. Mississippi Rule of Evidence 602 states that "[a] witness may not testify to a matter unless evidence is introduced sufficient to support a finding that he has personal knowledge of the matter." In this case, Henderson had no personal knowledge that Travis had driven the car. *687 He did not witness Travis behind the wheel, he did not speak to others who saw Travis behind the wheel, and Travis did not admit to driving the car. In fact, Henderson testified that he could not remember whether he even asked Travis if he had been driving. Clearly, Henderson had no personal knowledge or evidence that Travis was operating the vehicle, and the initial objection was properly sustained.
¶ 59. Additionally, Mississippi Rule of Evidence 701 only permits opinion testimony from lay witnesses when that testimony "is limited to those opinions or inferences which are (a) rationally based on the perception of the witness. . . ." According to the comment to Mississippi Rule of Evidence 701, a lay opinion "must be based on first-hand knowledge." As the Mississippi Supreme Court has stated repeatedly, "[t]he requirement of personal knowledge as a prerequisite to lay opinion testimony is absolute." Wells v. State, 604 So.2d 271, 278-279 (Miss.1992). Henderson stated repeatedly during his testimony that he had no first-hand knowledge regarding this issue; therefore, his testimony was inadmissible.
¶ 60. On redirect examination, Henderson simply re-iterated his initial testimony. Counsel for Travis again objected to this testimony, again citing a lack of foundation for Henderson's opinion. The trial court overruled the objection the second time, even though the questioning by the prosecutor elicited no new information. Henderson's testimony on cross-examination clearly demonstrates that he had no personal knowledge:
Q: Okay. Officer, you testified earlier  and you were testifying about what your opinions were as far as what happened at the accident. Let me just see if I can sum this up. You don't have any personal knowledge how this accident happened. Do you?
A: Personally?
Q: Yes, sir.
A: No, Sir.
Q: Okay. You don't have any personal knowledge as to when it happened. Do you?
A: No, sir.
Q: And you don't have personal knowledge that Adrian Travis was operating an automobile. Do you?
A: No, sir.
Q: No one told you and he made no admissions to driving an automobile that night. Is that correct?
A: I can't 
Q: Based on your personal knowledge.
A: I can't remember. I can't swear to it one way or the other.
. . . .
Q: A lot of this information that you put in your report regarding speed, direction and drivers are assumptions on your part. Do you agree with that?
A: No, sir. Whatever I put in my report is not an assumption.
Q: Okay.
A: I had some reason for it.
Q: Is it based in fact and personal knowledge?
A: I hope it's based on fact.
Q: Okay. Well, let me ask you this again now that you're telling me that it's based on fact: What facts or proof do you have to tell this jury, as we sit here today, that Adrian Travis was driving or operating any vehicle that night on the roads of the State of Mississippi? What proof or facts do you have for this jury? Not assumptions, proof or facts.

*688 A: Well, because I'm sworn not to fabricate anything on that. I have no reason to fabricate anything on Mr. Travis. And I have a reason  if I wrote down something, I had a reason to put it down. I didn't just make it up.
Q: I'm asking you to tell the jury what proof or facts you have.
A: As far as anything I saw? None.
Q: Anything you were told.
A: I was probably told something.
Q: I'm not asking you to guess.
A: I'm not guessing. I was  I had to get it from someplace.
¶ 61. Ultimately, Henderson testified on cross-examination that he based his opinion on "just common sense." Because the testimony demonstrates that Henderson had no personal knowledge, either through his own observations or through his investigation, he had no reasonable basis to give the opinion that Travis was operating the second vehicle at the scene. The trial court erred in admitting this testimony over the objections of Travis' counsel.
Insufficiency of the evidence
¶ 62. Travis raised the issue of sufficiency of the evidence in both his motion for a directed verdict and his motion for a judgment notwithstanding the verdict/motion for a new trial. The standard of review for those motions is as follows:
In Carr v. State, 208 So.2d 886, 889 (Miss.1968), we stated that in considering whether the evidence is sufficient to sustain a conviction in the face of a motion for directed verdict or for judgment notwithstanding the verdict, the critical inquiry is whether the evidence shows "beyond a reasonable doubt that accused committed the act charged, and that he did so under such circumstances that every element of the offense existed; and where the evidence fails to meet this test it is insufficient to support a conviction." However, this inquiry does not require a court to "ask itself whether it believes that the evidence at the trial established guilt beyond a reasonable doubt." Instead, the relevant question is whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt. Jackson v. Virginia, 443 U.S. 307, 315, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979) (citations omitted) (emphasis in original). . . . However, if a review of the evidence reveals that it is of such quality and weight that, "having in mind the beyond a reasonable doubt burden of proof standard, reasonable fair-minded men in the exercise of impartial judgment might reach different conclusions on every element of the offense," the evidence will be deemed to have been sufficient. Edwards, 469 So.2d at 70.
Bush v. State, 895 So.2d 836, 843(¶ 16) (Miss.2005). Travis argues that the evidence was insufficient to find that he was operating the second vehicle involved in the accident that occurred on February 7, 1999.
¶ 63. The indictment charged Travis with violating Mississippi Code Annotated Sections 63-11-30(1)(c) and 63-11-30(5). Those statutory sections read in pertinent part as follows:
(1) It is unlawful for any person to drive of otherwise operate a vehicle within this state who . . . (c) has an alcohol concentration of ten one-hundredths percent (.10%)[1] or more for persons *689 who are above the legal age to purchase alcoholic beverages under state law. . . .
. . . .
(5) Every person who operates any motor vehicle in violation of the provision of subsection (1) of this section and who in a negligent manner causes the death of another . . . shall, upon conviction, be guilty of a separate felony for each such death. . . .
Miss.Code Ann. § 63-11-30. To prove DUI homicide, the State was required to prove the following elements: (1) that the defendant was operating a vehicle while under the influence of intoxicating liquor or with a blood alcohol level of .10% or more; and (2) that the defendant caused the death of another in a negligent manner. Hedrick v. State, 637 So.2d 834, 837-38 (Miss.1994). Travis argues that the State failed to proved that he was operating the motor vehicle and that, therefore, the State failed to prove that he was responsible for the death of Milton Garrett.
¶ 64. After reviewing the transcript of the trial, I find that the State offered the following evidence to support its assertion that Travis was operating the motor vehicle: (1) Travis was at the scene of the accident; and (2) Sergeant Henderson, the police officer who investigated the accident, concluded that, based on his limited "investigation" and "common sense," Travis was driving the car that struck the victim's car. No other evidence was offered to prove this charge.
¶ 65. Travis has raised the admission of Henderson's testimony as a point of error on appeal, arguing that the testimony was permitted despite a lack of foundation for that opinion. As stated supra, I agree that the testimony was inadmissible. Setting aside that issue for the sake of argument, however, I would hold that even if Henderson's testimony had been properly admitted, the evidence was insufficient to conclude that Travis was operating a motor vehicle. Accordingly, the evidence is insufficient to sustain a conviction for DUI homicide, and the trial court erred in failing to grant the motion for a judgment notwithstanding the verdict.
¶ 66. To prove operation of a motor vehicle, the statute requires "that the vehicle at least be capable of being moved by the defendant, whether the accused was then in the act of causing it to move or not." Lewis v. State, 831 So.2d 553, 557(¶ 11) (Miss.Ct.App.2002). Further, Lewis holds that
[b]eing intoxicated and being at the wheel of a parked motor vehicle with the motor off do not by themselves form sufficient facts for conviction for driving under the influence. . . . We hold that to be guilty of driving or operating a motor vehicle while under the influence of drugs or alcohol, or with an illegally high blood alcohol content, the person must be shown by direct proof or reasonable inferences to have driven the vehicle while in that condition, or as in Jones [Jones v. State, 461 So.2d 686 (Miss.1984)] to be `operating' the vehicle while sitting behind the wheel, in control with the motor running.
Lewis, 831 So.2d at 558 (¶¶ 17-18). Applying this standard to the case sub judice, I believe that the evidence is insufficient to *690 prove that Travis was operating the second car found at the scene.
¶ 67. The testimony and evidence at trial also revealed the following information:
(1) Henderson testified on cross-examination that no eyewitnesses observed Travis driving the car (or even sitting in the car). Moreover, Henderson testified that he did not question the emergency workers who arrived at the scene first to determine whether they had seen Travis driving the car.
(2) When Henderson questioned Travis at the scene, Travis never admitted to driving the car. Travis did state that he was "going to his girlfriend's house." The prosecution argued that it was unreasonable to conclude that he walked there, but the prosecution presented no evidence of the distance between the scene of the accident and Travis' girlfriend's address, raising the issue for the first time in closing argument. Additionally, the prosecution failed to introduce evidence of Travis' whereabouts earlier that evening.
(3) The second car did not belong to Travis. The car was registered to Eddie Winston, and neither Henderson nor the district attorney followed up to find out whether Winston loaned the car to Travis or whether Winston himself was driving the car that night.
(4) Henderson also testified on cross-examination that Travis was not in possession of the keys when he arrived at the scene. The State did not produce any evidence regarding the location of the keys just after the accident.
(5) No physical evidence placed Travis in the car or even linked him to the car. Both Henderson and Kazery testified on cross-examination that they did not lift fingerprints from the car's steering wheel or conduct any other forensic tests that might have produced evidence placing Travis in the vehicle.
This evidence establishes that the State failed to prove that Travis was operating a motor vehicle, even when considered in conjunction with Henderson's "common sense" conclusion that Travis was driving the car.
¶ 68. In Lewis, this Court reversed a DUI (not DUI homicide) conviction. When a police officer approached the vehicle, which was in the left lane of traffic on eastbound Highway 90 in Harrison County, the officer found Lewis at the wheel with the keys in the ignition but with the motor off. See id. at 555(¶ 2). Lewis told the officer that the van was out of gas. The officer assisted Lewis in pushing the car to the shoulder. See id. The officer then detected the smell of alcohol. See id. at (¶ 3).
¶ 69. Although Lewis never told the officer that he wasn't driving, at trial, Lewis argued that his friend had been driving the van. See id. at 557, 558 (¶¶ 12 and 16). Lewis further testified that when the van ran out of gas, his friend left the van to walk to a gas station. Only at that point, Lewis testified, did he move to the driver's seat. See id. at 557(¶ 13). The prosecution did not introduce any evidence to prove whether the van actually was out of gas. See id. at 558(¶ 15). The Court held that the evidence was insufficient to establish that Lewis had operated the vehicle.
¶ 70. Conversely, this Court has held that circumstantial evidence can be sufficient for a conviction of DUI homicide. In Dunaway v. State, 919 So.2d 67 (Miss. *691 Ct.App.2005), the defendant was convicted of DUI homicide following an accident in which the son of the defendant's girlfriend was killed. On appeal, Dunaway argued that the trial court erred in denying his motion for judgment notwithstanding the verdict because the State failed to prove that he was operating the vehicle at the time of the accident. This Court held that the testimony of the victim's mother that Dunaway refused to let her son drive minutes before the accident and that she observed Dunaway walking toward the driver's side of the car, combined with photographic evidence and testimony that the driver's seat and extra cushion were in the position normally used when Dunaway drove the car due to his short stature, the evidence was sufficient to sustain a conviction. See id. at 71(¶ 10).
¶ 71. In this case, Travis' mere presence at the scene and Henderson's "common sense" conclusion that Travis was the driver of the vehicle that struck the victim are insufficient to sustain a conviction for DUI homicide. In light of all of the evidence and considering that evidence which supports the guilty verdict as true, I can still only reach the conclusion that the evidence is insufficient to support a finding of guilty. Accordingly, I believe that the trial court erred in refusing to grant Travis' motion for a directed verdict and/or his motion for judgment notwithstanding the verdict.
¶ 72. The majority concludes that, under the applicable standard of review and considering the circumstantial evidence, "reasonable and fair-minded jurors in the exercise of sound judgment could have logically concluded that Travis was indeed the driver of the other vehicle. . . ." I agree that the jury should be allowed to draw inferences that are reasonably based on the circumstantial evidence; however, those inferences must comport with the direct evidence as well. The direct evidence proved that the second vehicle involved in the accident did not belong to Travis. Henderson's own testimony proved that nobody observed Travis operating the vehicle, and no direct evidence, such as fingerprints or other physical evidence, tied Travis to that vehicle.
¶ 73. The majority discusses four issues raised by the evidence that it believes the jury reasonably could have considered in concluding that Travis was operating the vehicle. I address each of those issues in turn.
1. The time and location of the accident
¶ 74. The majority states that the time and location of the accident "allowed the jury to form a reasonable inference that Travis drove the car that hit Garrett." The majority relies on the time of the accident, which it states as "approximately 2:00 a.m." and the location of the accident, which Officer Henderson testified was "three to four miles" north of Canton, Mississippi.
¶ 75. As an initial matter, the testimony before the jury was that the call came into police headquarters at approximately 2:00 a.m., not that the accident occurred at 2:00 a.m. Sergeant Henderson, the investigating officer, did not know who made the call. He testified that he was likely asleep at home when he received the call. According to his own report, Henderson arrived at the scene at 2:20 a.m. Henderson also testified that he did not know what time the accident occurred, and in response to cross-examination on the time of the accident, admitted that the accident could have occurred at midnight  he simply did not know. Moreover, the medical evidence, which was limited to the cause of death, and was introduced by way of a stipulation, did not list the time of Garrett's death. Accordingly, the evidence is *692 insufficient to allow the jury to draw an inference that the accident occurred at 2:00 a.m. and that Travis' presence indicates that he was driving the second vehicle.
¶ 76. The majority calls the area rural and not likely to draw much pedestrian traffic, but the photographs introduced into evidence by the State offer only a limited perspective of the landscape. Accordingly, the majority's conclusion is not supported by the evidence and is not a reasonable inference. For example, State's Exhibit 1 is a photograph depicting Highway 51 north of the Davis Crossing intersection. The perspective of that photograph is limited, as a hill blocks the view of the landscape just past the intersection. From the evidence in the record, the Court cannot know, nor could the jury, what lay on the other side of the hill. Likewise, that photograph offers no perspective of the landscape on either side of the intersection. State's Exhibit 2 depicts Highway 51 south of the Davis Crossing intersection. Again, the perspective of the photograph is limited, but we know a little more about this photograph as a result of Henderson's testimony. Henderson testified that the intersection was three to four miles north of the Canton city limits, but he offered no testimony as to whether the area was rural or residential. Both photographs depict a limited view of the area north and south of the intersection but offer no view of the area east and west of the intersection along Davis Crossing.
¶ 77. It is quite possible, in fact, that Davis Crossing was a residential street. Without evidence in the record, however, there is no reasonable inference to be drawn with regard to whether the area surrounding that intersection was populated or, as the majority has concluded, rural. With no evidence in the record supporting either position, the jury could not draw any reasonable inference on the issue of Travis' presence at the scene. The jury could not conclude whether it was reasonable for Travis to be at the site as a pedestrian or whether it was reasonable to believe that he was somehow involved in the accident.
¶ 78. This lack of evidence refutes the inference that, by simply using the process of elimination, Travis was operating the vehicle. If the jury could not conclude, based on the record evidence, that the accident occurred at 2:00 a.m. and that the area was so rural as to prohibit pedestrian traffic, then the jury could not, by the process of elimination, conclude that Travis, as the only other person present at the scene according to Sgt. Henderson's observations, was operating a vehicle that did not belong to him.
2. The severity of the collision
¶ 79. The majority raises two issues with regard to the severity of the collision. First, it contends that the collision was severe enough that the jury could have concluded that the driver of the second vehicle would have been unable to leave the scene. I agree that, based on the photographic evidence and the fatality that resulted from the collision, the accident should be categorized as severe. However, that evidence alone, is not enough to conclude that a person involved in the accident would have been unable to leave the scene.
¶ 80. Second, the majority states that Henderson's testimony regarding Travis' mental state and need for medical attention allowed the jury to infer that Travis was involved in the accident. Henderson's testimony, however, permits no such inference. The majority states "Officer Henderson testified that, when he arrived at the scene, emergency personnel were tending to Travis." This statement simply *693 is not supported by the evidence. In fact, Officer Henderson testified that his first act upon arriving at the scene was as follows:
A: I got out to check to see if anyone needed medical attention. There was  best I can remember, there was some emergency workers there. And after I'd looked at the deceased  the party that was deceased, then I checked Mr. Travis to see did he need medical attention.
This statement does not indicate that Travis was receiving medical attention when Henderson arrived. Henderson then testified that Travis "was in the vicinity of the cars in the northwest corner of Davis Crossing, between Davis Crossing and 51 there." Henderson further stated that Travis seemed "kind of confused" and "kind of lost."
¶ 81. Despite Travis' perceived mental state, however, and Henderson's testimony that, "I think he was under the care of one of the firefighters or somebody, I believe, when I got there  one of the emergency workers," Travis was not physically injured. Henderson testified as follows on redirect examination:
Q: Thank you. Mr. Ward asked you about the Defendant being dazed or whether or not that was a result of the accident. Did he require hospital treatment?
A: No, sir.
Q: Was he bleeding from the forehead, nose, or mouth?
A: No, sir.
Q: Was he bruised, or have any lacerations, or cuts to his head?
A: Not that I saw.
Q: Did he complain of being dizzy, or vomiting, or anything like that?
A: No, sir.
Q: Was there anything to indicate to you that he needed to go to the hospital?
A: No, sir.
¶ 82. As the majority notes, State's Exhibit 3, a photograph of the second vehicle, depicts a "spiderweb" break in the top portion of the windshield on the driver's side. Such a break would allow the jury to draw a reasonable inference that the driver of the car struck the windshield with his head. Based on the severity of the collision, it is also reasonable to conclude that the driver would have sustained at least a cut or a bruise from the impact with the windshield. Henderson's own testimony demonstrates that Travis had no injuries. Accordingly, it would be illogical to conclude that Travis was driving the second vehicle at the time of the accident.
3. Travis' unexplained presence at the scene
¶ 83. Travis told Henderson that he could not remember where he had been or how the accident occurred. He was able to tell Henderson that he was on his way to his girlfriend's house. The majority argues that because "Travis did not indicate that he was on foot or that he left from some place nearby or that he was on his way to some place nearby," the jury could conclude that Travis was driving the second vehicle.
¶ 84. This inference is not reasonable based on the limited information available to the jury. Although Travis apparently was the only person who could ascertain where he had been earlier that evening, it would have taken very little effort for Henderson to learn where Travis' girlfriend lived and the distance from the scene of the accident to her home. Henderson, however, did not investigate, nor did the district attorney's office conduct *694 an investigation. Accordingly, the jury heard no evidence regarding the distance that Travis would have traveled to reach his girlfriend's home and could not draw an inference that it was unreasonable to conclude that Travis was traveling on foot.
¶ 85. Additionally, the majority makes much of Travis' failure to deny that he was driving or to name another person as the driver. The testimony reveals, however, that Henderson failed to question Travis. Henderson testified that he couldn't remember whether Travis indicated that he was driving. He also couldn't remember whether he asked Travis if he had been driving. Henderson further testified that only Travis could provide that information. Furthermore, Henderson also testified unequivocally that Travis appeared "dazed," "confused," and "kind of lost," so it is not clear whether Travis even understood the limited questioning Henderson did conduct.
¶ 86. This testimony does not permit the jury to draw a reasonable inference that Travis was driving the second vehicle. When the jury also considered Travis' mental state and his blood-alcohol level, his failure to deny driving or name the driver and the fact that neither vehicle at the scene was registered to Travis, even less evidence exists to permit the jury to draw such an inference.
4. Sergeant Henderson's opinion
¶ 87. Finally, the majority argues that because "Officer Henderson was absolutely of the opinion that Travis drove the car that struck Garrett," the jury was allowed to rely on his opinion as proof of Travis' guilt. Had Henderson's opinion been based on any evidence at all, that opinion would carry some weight with the jury. Henderson's opinion, however, had no real basis in fact and should have been excluded.
¶ 88. Henderson's testimony that he had no personal knowledge was clear. He did not witness Travis operating a vehicle. He did not interview anyone who saw Travis operating the vehicle. Travis did not admit to operating the vehicle. Henderson's opinion that Travis was operating the vehicle was based, in his own words, on "common sense."
¶ 89. Again, the trial court should not have admitted the testimony under the standards for admission set forth in Mississippi Rules of Evidence 602 and 702. However, even if Henderson's testimony was properly admitted, that testimony, when weighed against the other evidence under the appropriate standard, does not allow the jury to draw the inference that Travis was operating the vehicle. For the foregoing reasons, I dissent and would reverse and render.
LEE, P.J., IRVING AND CHANDLER, JJ., JOIN THIS OPINION.
NOTES
[1] In 2002, the legislature amended this statute to lower the legal limit from .10% to .08%. In 1999, however, when the accident occurred, the statute read as cited supra; therefore, this Court reviews the case under the statute as it existed on the date of the accident. Christmas v. State, 700 So.2d 262, 265 (Miss.1997) (holding that any "law that alters the legal rules of evidence, and receives less, or different, testimony, than the law required at the time of the commission of the offense in order to convict the offender" is an ex post facto violation). Because Travis registered a blood-alcohol content of .14%, this point is moot.