# IN THE SUPREME COURT OF MISSISSIPPI

## NO. 2017-KA-01089-SCT

*JASON LEE MILES a/k/a JASON MILES a/k/a*
*JASON L. MILES*

*v.*

*STATE OF MISSISSIPPI*

| | |
|---|---|
| DATE OF JUDGMENT: | 07/17/2017 |
| TRIAL JUDGE: | HON. CHRISTOPHER A. COLLINS |
| TRIAL COURT ATTORNEYS: | CHRISTOPHER MORGAN POSEY |
| | BRITTANY WHITE BROWN |
| | MITCHELL DEE THOMAS |
| COURT FROM WHICH APPEALED: | NESHOBA COUNTY CIRCUIT COURT |
| ATTORNEYS FOR APPELLANT: | OFFICE OF THE STATE PUBLIC |
| | DEFENDER |
| | BY: GEORGE T. HOLMES |
| | MITCHELL DEE THOMAS |
| ATTORNEY FOR APPELLEE: | OFFICE OF THE ATTORNEY GENERAL |
| | BY: BILLY L. GORE |
| DISTRICT ATTORNEY: | STEVEN SIMEON KILGORE |
| NATURE OF THE CASE: | CRIMINAL - FELONY |
| DISPOSITION: | AFFIRMED - 07/26/2018 |
| MOTION FOR REHEARING FILED: | |
| MANDATE ISSUED: | |

**BEFORE RANDOLPH, P.J., COLEMAN AND CHAMBERLIN, JJ.**

**RANDOLPH, PRESIDING JUSTICE, FOR THE COURT:**

¶1.     Jason Lee Miles appeals the verdict of a Neshoba County jury, which found him guilty

of grand larceny. Finding no error, we affirm his conviction and sentence.

**STATEMENT OF FACTS AND PROCEDURAL HISTORY**

¶2. The December 2016 Neshoba County Grand Jury indicted Miles for grand larceny. Miles was arraigned on March 8, 2017, and was ordered in writing to appear for call on the first day of the July term, which was July 3, 2017. His trial was set for the second Monday of term, July 10, 2017. On June 28, 2017, the court issued an additional written Order Presetting Place One Criminal Case, setting forth a trial date of July 10, 2017. This order also was furnished to the three attorneys in the public defender's office, who represented Miles.

¶3. Miles's trial began on July 11, 2017. Miles's counsel did not move for a continuance until that same date. Counsel argued that he personally did not become aware of this trial date until the start of the July term, i.e., July 3. Counsel related that he did not receive discovery until July 3, and did not receive a DVD of Miles transporting the stolen property taken on January 5, 2016, until July 5. Counsel argued he personally had not had adequate time to prepare due to other trials. Counsel related that Miles had not provided him with a list of potential witnesses until the afternoon before trial. Counsel asked for additional time "to allow us to compel those witnesses and also to make -- to at least view the four-wheeler that was recovered and is alleged to be the same as the one depicted in the video in the possession of my client."

¶4. The trial court reminded counsel that Miles was arraigned on March 8, 2017. At his arraignment, Miles was given a trial date of July 10, 2017. The court stated that it was its common practice to notify all three public defenders of trial dates. Counsel acknowledged that P. Shawn Harris, commonly referred to as the chief public defender, had assigned Miles's case to him. The trial court denied the motion for continuance, finding:

2

Mr. Thomas, the record is clear that Mr. Harris and the public defenders' office were on notice of this trial setting a day ago, on July the 10th, back on the 8th day of March. You have the full and complete subpoena power of the Court for any witnesses that you see fit to issue a subpoena for. I don't think I would be further dilatory in issuing them, though. If you are interested in issuing subpoenas returnable instanter, I extend that power of the Court to you.

The record reflects that five subpoenas subsequently were issued to the following people: Mr. Midly, David Holley, Paul Harrison, Jimmy Smith, and Mr. Thompson.

¶5. During the trial, it was gleaned that Donald Coleman was the present owner of a house and a one-acre tract of land in Neshoba County, located off Highway 16 East in Longdale. Seven years prior, Donald had a series of strokes, which eventually caused him to be placed in a nursing home in Meridian. Lavell, Donald's brother, testified that he regularly checked on Donald's land and property, in his absence, including a four-wheeler, lawn mower, and trailer, kept under a shed beside Donald's house. Although it was not marked as an exhibit, upon examination, Lavell verified the document giving him power of attorney over his brother.

¶6. On January 5, 2016, Lavell drove by Donald's house and saw the four-wheeler, lawn mower, and trailer chained and locked under the shed. The next evening, the equipment was gone. Lavell noticed tire tracks in the yard and immediately called the Neshoba County Sheriff's Office. At that time, Lavell's granddaughter, Brittney, was living in Donald's house while she attended college.

¶7. Lavell testified that the trailer was blue, six to eight feet long, with two wheels, and was approximately ten to fifteen years old. The sides of the trailer were wooden with a metal

3

back that could be used as a ramp for loading and unloading. Lavell testified that the present value of the trailer was approximately $1,000 to $1,500.

¶8. Lavell testified that the four-wheeler was a dark green Arctic Cat, purchased new approximately fifteen to twenty years prior. At the time the four-wheeler was stolen, it was no longer running. Lavell estimated the present value was between $800 and $1,500.

¶9. Finally, Lavell testified that the lawn mower was a Hustler that Donald had bought three and a half years ago. Lavell had been with Donald when he purchased the lawn mower, and Lavell testified the purchase price was $2,800. Lavell testified that the lawn mower was in good operating condition, and he believed the lawn mower presently was worth $2,000 to $2,500.

¶10. During the trial, Lavell was shown a DVD and photographs taken by a Philadelphia police officer on the night of January 5, 2016. Lavell testified that the lawn mower and trailer shown in the video and depicted in the photographs were his brother's lawn mower and trailer.

¶11. Jeremy Pinson, then employed by the Jasper County Sheriff's Office, testified that on January 5, 2016, he was employed as a patrol officer with the Philadelphia Police Department, working the night shift. That night, he conducted a routine traffic stop on a Ford pickup truck pulling a trailer without lights or a tag. Pinson testified the DVD and photographs, previously shown to Lavell, fairly and accurately depicted the scene of the traffic stop when he pulled over the aforementioned pickup. Pinson further testified that the driver of the truck was Jason Miles, who was pictured in the photographs and video. After

4

Pinson issued citations for driving with an expired tag and a suspended license, Miles was allowed to leave. Pinson also testified that two other men, also depicted in the photographs and video, were in the truck with Miles that night.

¶12.    Daniel Day, an acquaintance of Miles's, testified that Miles asked Day to help him pick up a trailer on January 5, 2016. Day testified that he helped Miles hook up a trailer, with a lawn mower and four-wheeler in the trailer, "somewhere down Highway 16 towards the Kemper area." Day recalled being stopped by a police officer that same night. Day testified that the photographs previously shown to Lavell accurately showed the trailer he had helped Miles hook up.

¶13.    Day admitted that he recently had pleaded guilty to possession with intent to sell methamphetamine. As part of his plea deal, he was required to testify in Miles's case. Day testified that his testimony had not changed since giving his initial statement to Investigator Sciple.

¶14.    Investigator Sciple testified that he had investigated a case involving a stolen four-wheeler, trailer, and lawn mower, after being notified by Lavell Coleman of the theft at his brother's home. At the scene, Sciple found an open-air shed and "tracks in the yard where somebody had pulled off the road, went into the yard and almost got stuck in the yard where the trailer and everything was, and it was loaded up there and left."

¶15.    During the investigation, Sciple learned of the traffic stop involving Miles, Day, and Jimmy Smith. The trailer and lawn mower from the traffic-stop video were identified as Donald's stolen equipment. After Sciple questioned Day, Day gave a written statement as to

5

his involvement. Sciple spoke with Smith, but he denied being involved. Miles was released from jail before Sciple was able to question him. The lawn mower was returned, and Lavell confirmed it was the missing lawn mower. The trailer and four-wheeler were never found. The State rested, and Miles moved for a directed verdict, which was denied.

¶16.   Tony Thompson, a longtime friend of Miles's, testified that he had seen Miles with a blue trailer prior to January 2016. However, he testified that he had never seen Miles with a Hustler lawn mower or an Arctic Cat four-wheeler.

¶17.   At the conclusion of Thompson's testimony, counsel for Miles requested a sidebar discussion as to the status of the defense's witnesses.  Although counsel had not yet spoken to Jimmy Smith or Paul Harrison, he made a proffer based on what Miles stated the witnesses' testimony would be if called.  Counsel proffered that Harrison would testify that he purchased a blue utility trailer and lawn mower from Miles, and Smith would testify that neither he nor Miles stole the trailer or lawn mower.

¶18.   Miles testified that, prior to January 2016, he personally owned a blue utility trailer, purchased from a now-deceased man for $350. He testified that he purchased the lawn mower from a lady who lived on an Indian reservation. He could not recall her name, where she lived, or when he bought the mower, but he paid $50 for it. Miles testified that he did not know anything about an Arctic Cat four-wheeler. Miles further testified that he sold the trailer for $200. Miles testified that the night he was stopped by the Philadelphia police, he was on his way to trade the trailer and lawn mower.

¶19. After Miles testified, the trial court excused the jury and informed counsel that Mr. Midly and David Holley were deceased. Miles's counsel reported that, after speaking to Paul Harrison, he would abandon Harrison as a witness. Counsel further stated that, "We have not been able to make contact with Mr. Smith; however, we have decided not to call Mr. Smith as a witness." The fifth person subpoenaed, Mr. Thompson, was served, appeared, and testified. Counsel stated the only other potential witness was the person who had sold the lawn mower to Miles, but he was unaware of her name. At that point, the defense rested.

¶20. The jury found Miles guilty of grand larceny of an aggregate amount not less than $1,000 but not more than $5,000. He was sentenced to five years in the custody of the Mississippi Department of Corrections (MDOC), with one year suspended.

¶21. Miles moved for a new trial, arguing the verdict was against the overwhelming weight of the evidence, *inter alia*.[1] The trial court denied the motion, and Miles moved to appeal *in forma pauperis*.

## STATEMENT OF THE ISSUES

¶22. On appeal, Miles sets forth the following issues:

    I.    Whether the State's evidence of market value was incompetent, and therefore, insufficient.

---

[1] Miles moved for a new trial on the following grounds: (1) the verdict was against the overwhelming weight of the evidence; (2) the court erred in refusing to grant a preemptory instruction and erred in refusing to direct a verdict at the conclusion of the State's case; (3) the court erred in refusing to grant each instruction submitted by Miles; (4) the court erred in sustaining every objection made by the State and overruling every objection made by Miles; and (5) the court erred in admitting evidence offered by the State, including testimony regarding valuation by persons not qualified to give such testimony.

II.     Whether the trial court erred in denying Miles's Motion for Continuance.

## STANDARD OF REVIEW

¶23.    The established standard of review for the admission or exclusion of evidence is whether the trial court abused its discretion. *Wells v. State*, 233 So. 3d 279, 284 (Miss. 2017), *reh'g denied* (Jan. 25, 2018) (citing *Evans v. State*, 25 So. 3d 1054, 1057 (Miss. 2010)). This abuse-of-discretion standard also extends to review of a trial court's denial of motions for continuance. *Mouton v. State*, 227 So. 3d 1079, 1083 (Miss. 2017), *reh'g denied* (Aug. 31, 2017).

## I.     Evidence of Market Value of Stolen Property

¶24.    Miles claims the trial court erred in allowing Lavell to testify as to the market value of his brother's stolen property. Miles argues that, because Lavell is not the owner of the property, he is not competent to give a lay opinion as to the item's fair market value.

¶25.    The State argues that Lavell is the attorney-in-fact for his brother. The State also argues that, even though Lavell is not the owner of the property, he has been handling his brother's affairs for more than seven years. Lavell personally locked the items under the shed, frequently checked on his brother's property, and had significant familiarity with the property.

¶26.    In grand-larceny cases, the market value of the property at the time and place of the larceny is the most accurate measurement for satisfying that element of the crime. *Totten v. State*, 166 So. 3d 32, 35 (Miss. 2015). This Court consistently has held that "evidence of the

purchase price of stolen items is relevant circumstantial evidence from which the jury can reasonably infer the market value of the items at the time of the theft." *Id.*

¶27.   In *Gunn v. State*, 56 So. 3d 568 (Miss. 2011), this Court upheld a grand-larceny conviction in which the evidence submitted as to the value of stolen tools was that the victim had paid $1,236.90 for the tools six months before they were stolen. *Gunn*, 56 So. 3d at 571. The Court held that the evidence presented was sufficient for a reasonable juror to find that the value of the stolen tools exceeded the statutory requirement. *Id.* In *Totten*, the Court found that evidence was presented to show that the purchase price of the stolen items, most of which were purchased immediately before the burglary, was at least $1,860. *Totten*, 166 So. 3d at 35.

¶28.   Similar to *Gunn* and *Totten*, Lavell presented sufficient evidence of the property's current value for a reasonable jury to infer that the cumulative value of the items was equal to or greater than $1,000 at the time of the theft. Lavell provided testimony that he had been with Donald when the Hustler lawn mower had been purchased. The purchase price three years prior to the burglary was $2,800. Lavell further testified that the lawn mower was in good operating condition, and he believed the lawn mower's present value was $2,000 to $2,500. This testimony as to the lawn mower alone is sufficient for a reasonable jury to infer the stolen property was valued between $1,000 and $5,000. Miles offered no evidence to rebut Lavell's testimony.

¶29.   Furthermore, Rule 701 of the Mississippi Rules of Evidence governs the admissibility of opinion testimony by lay witnesses and allows lay witnesses to give such opinions so long

9

as the inferences are "(a) rationally based on the perception of the witness, (b) helpful to the clear understanding of the testimony or determination of a fact or issue, and (c) not based on scientific, technical, or other specialized knowledge within the scope of Rule 702." M.R.E. 701. The trial court did not err in allowing Lavell to testify as to his opinions of the present value of the property. Lavell's lay opinions were admissible because they were based on his personal knowledge of the stolen items.

## II.     Motion for Continuance

¶30.    In order to preserve this issue for appeal, Miles was required to include the denial of the continuance in his motion for new trial. *Morgan v. State*, 741 So. 2d 246, 255 (Miss. 1999) (citing *Pool v. State*, 483 So. 2d 331, 336 (Miss. 1986)). Miles's motion for new trial made no mention of the denial of a continuance. Because the issue was not properly preserved, and because the trial court did not have an opportunity to rule on this claimed error, this issue is not properly before this Court and is procedurally barred. *Id.*

¶31.    Notwithstanding the procedural bar, this claim fails on the merits. Miles was allowed to subpoena five witnesses instanter. Two witnesses were deceased; two witnesses were abandoned; and one witness testified at the trial.

¶32.    Trial judges have wide latitude in deciding whether to grant continuances, and that decision is left to the sound discretion of the trial judge. *Lambert v. State*, 654 So. 2d 17, 22 (Miss. 1995). Denial of a continuance is not reversible unless manifest injustice appears to have resulted from the denial. *Hatcher v. Fleeman*, 617 So. 2d 634, 639 (Miss.1993). The trial judge's refusal to grant a continuance was not an abuse of discretion, nor is there any

10

indication that Miles suffered a manifest injustice resulting from the denial of a continuance. This issue is without merit.

## CONCLUSION

¶33. The trial court did not abuse its discretion in allowing Lavell to testify as to the fair market value of the stolen items and/or in denying the motion for continuance filed the day of trial. Finding no error, we affirm Miles's conviction and sentence.

¶34. **AFFIRMED.**

**COLEMAN, MAXWELL, BEAM AND CHAMBERLIN, JJ., CONCUR. WALLER, C.J., DISSENTS WITH SEPARATE WRITTEN OPINION JOINED BY KITCHENS, P.J., KING AND ISHEE, JJ.**

**WALLER, CHIEF JUSTICE, DISSENTING:**

¶35. Because the evidence used to establish the value of the stolen property lacked a sufficient factual basis, I respectfully dissent.

¶36. Jason Lee Miles was convicted of grand larceny under Mississippi Code Section 97-17-41(1). The State carried the burden of proving, beyond a reasonable doubt, that Donald Coleman's stolen property was "of the value of One Thousand Dollars ($1,000.00) or more, but less than Five Thousand Dollars ($5,000.00)[.]" Miss. Code Ann. § 97-17-41 (Rev. 2014). To prove the value of the three stolen items–the four-wheeler, lawn mower, and trailer–the State relied on the testimony of Lavell Coleman, Donald's brother.

¶37. According to Lavell, he was with Donald when he purchased the lawn mower three and one half years before the theft, and the purchase price of the mower was $2,800. "This Court has held that the proper measure of the value of property is the market value of the

11

property at the time and place of the larceny, rather than the original purchase price." ***Gunn v. State***, 56 So. 3d 568, 571 (¶ 10) (Miss. 2011); *see also **Totten v. State***, 166 So. 3d 32, 35 (¶ 7) (Miss. 2015); ***Barry v. State***, 406 So. 2d 45, 47 (Miss. 1981); ***Thompson v. State***, 910 So. 2d 60, 63 (¶ 9) (Miss. Ct. App. 2005). It is true that "evidence of the purchase price of stolen items is relevant circumstantial evidence from which the jury can reasonably infer the market value of the items at the time of the theft." ***Totten***, 166 So. 3d at 35 (¶ 7). However, in those cases where we have affirmed the use of the purchase price as circumstantial evidence, the length of time was significantly closer between the purchase and the larceny. *See, e.g., **Totten***, 166 So. 3d at 35 (¶ 8) (The purchases were made "recently before the burglary[.]"); ***Gunn***, 56 So. 3d at 571 (¶ 11) (The items were purchased "six months before they were stolen."). Here, three and half years had elapsed between the time the lawn mower was purchased and when the larceny occurred. Taking depreciation into account, the timing is too attenuated to calculate the market value of the lawn mower at the "time and place of the larceny" by using only the purchase price.

¶38.    But Lavell did not testify only to the purchase price of the lawn mower. He also gave a lay opinion as to what he thought all three of the items were worth at the time of the larceny: the lawn mower ($2,000 to $2,500); the fifteen-to-twenty-year-old, nonfunctioning four-wheeler ($800 to $1,500); and the trailer ($1,000 to $1,500). Miles's defense counsel timely objected to Lavell giving his opinion because he was not the owner of the items and had established no basis for knowing their market value. The trial court overruled Miles's objections because Lavell was "familiar with the property." While true, Lavell was not the

12

owner of the items, and his familiarity with them does not mean he was "familiar with the market value." ***Williams v. State***, 763 So. 2d 186, 189 (¶ 10) (Miss. Ct. App. 2000). Lavell "could speculate, but that is insufficient." ***Id.***

¶39.     Since the State failed to prove the market value of the items at the time and place of the larceny, I would reverse the judgment of the Neshoba County Circuit Court and remand the case for further proceedings.

**KITCHENS, P.J., KING AND ISHEE, JJ., JOIN THIS OPINION.**