# IN THE COURT OF APPEALS OF THE STATE OF MISSISSIPPI

## NO. 2018-KA-01412-COA

**LAERTEZ MONSHEA MANYFIELD A/K/A LAERTEZ M. MANYFIELD**                    APPELLANT

**v.**

**STATE OF MISSISSIPPI**                    APPELLEE

| | |
|---|---|
| DATE OF JUDGMENT: | 09/21/2018 |
| TRIAL JUDGE: | HON. JEFF WEILL SR. |
| COURT FROM WHICH APPEALED: | HINDS COUNTY CIRCUIT COURT, FIRST JUDICIAL DISTRICT |
| ATTORNEY FOR APPELLANT: | S. MALCOLM O. HARRISON |
| ATTORNEY FOR APPELLEE: | OFFICE OF THE ATTORNEY GENERAL BY:  ALICIA MARIE AINSWORTH |
| DISTRICT ATTORNEY: | ROBERT SHULER SMITH |
| NATURE OF THE CASE: | CRIMINAL - FELONY |
| DISPOSITION: | AFFIRMED - 05/26/2020 |
| MOTION FOR REHEARING FILED: | |
| MANDATE ISSUED: | |

**EN BANC.**

**CARLTON, P.J., FOR THE COURT:**

¶1.    A Hinds County Circuit Court jury convicted Laertez M. Manyfield of manslaughter by culpable negligence for the killing of James Freeman in a vehicle accident in which the jury found that the truck driven by Manyfield struck Freeman's truck, head-on, when Manyfield was driving in the wrong direction on Interstate 55 (I-55) in Hinds County. Manyfield was also convicted of the felony of leaving the scene of an accident.

¶2.    On appeal, Manyfield argues that the trial court erred when it admitted evidence of his prior DUI conviction at trial and when it denied his motion for a continuance.  Manyfield

also argues that the evidence presented by the State against him was either insufficient as a matter of law to support his convictions, or the convictions were against the weight of the evidence. Upon review, we find no error and we therefore affirm Manyfield's convictions and sentences.

## STATEMENT OF FACTS AND PROCEDURAL HISTORY

¶3. Laertez M. Manyfield was indicted for the May 6, 2016 culpable negligent killing of James Freeman in violation of Mississippi Code Annotated section 97-3-47 (Rev. 2014) by driving north in a southbound lane on I-55, striking Freeman's vehicle, and killing him. Manyfield was also indicted for the felony of leaving the scene of an accident in violation of Mississippi Code Annotated section 63-3-401(1), (4) (Rev. 2013). Manyfield pleaded not guilty, and trial was set to begin in the First Judicial District of the Hinds County Circuit Court on September 5, 2018.

¶4. On September 4, 2018, Manyfield filed a motion for a continuance, asserting that he had received a DNA report from the State just four days earlier, on Friday, August 31, 2018, that showed Manyfield's DNA matched the DNA from the driver's side airbag of the white truck that the State contended was driven by Manyfield. Manyfield asserted that he needed more "time to retain an expert to either explain and/or provide testimony concerning the results of the DNA report." The next morning, prior to the start of trial, the trial court heard Manyfield's motion for a continuance and denied it. Manyfield raises the trial court's denial of his motion for a continuance as an assignment of error on appeal, and thus additional facts relating to this issue will be discussed below.

2

¶5.     The State's first witness was the 911 dispatcher who received a call at 1:52 a.m. on May 6, 2016, from Ricky Howard reporting an accident with injuries on I-55 near the Northside Drive exit in Jackson. Howard, an Uber driver, also testified as a witness at trial. He testified that he was traveling on I-55 South near Exit 100 when he saw a white truck driving on the exit ramp in the wrong direction. He swerved out of the way, and the truck barely missed him. Howard looked in his rearview mirror and saw the truck collide with a vehicle behind him. Howard testified that he got off at the next exit, looped back onto I-55, and called 911. He saw a truck teetering over the edge of the ramp and noticed a man running down the frontage road, headed north. Howard testified that the man was brown-skinned, with a "low" haircut, and "fit." Howard testified he did not see the person driving the white truck.

¶6.     Joseph Green testified as the State's next witness. He was traveling on I-55 North when he noticed headlights on the wrong side of the interstate in his rearview mirror. He testified it looked like a vehicle was coming up the exit ramp. Green heard a bang and saw smoke, so he pulled over and jumped over the median to try to help. He testified that he saw one truck teetering over the side, almost onto the frontage road, and another truck in the slow lane of the exit. He got to the white truck as the driver was trying to climb out of the truck. Green testified that he tried to get this man to sit and wait for help, but the man pushed Green out of his way. Green testified that the man was "very disoriented" and that he did not say anything to Green or even look at him. Green saw him walk south on I-55 toward Northside Drive.

¶7.    Green then went to the other truck and could not get the door open, so he climbed in the bed of the truck and tried to talk to the driver, who was later identified as James Freeman. Although Green could hear Freeman breathing, Freeman never responded in any way. Green stayed until the police arrived. He testified that he was not able to identify the driver of the white truck.

¶8.    Devonte Jackson, a good friend of Manyfield's brother Tim, also testified for the State. On the night of the accident, he was at a local Jackson bar for Cinco de Mayo, and he saw Manyfield there with alcohol. Jackson testified that he left after Manyfield but that he did not know when Manyfield left. When Jackson left, he passed by a car accident, and he testified that he recognized one of the trucks as one he had seen at the home of the Manyfields. Jackson testified he knew that Laertez drove it but that it was a family car, so the family sometimes switched cars.

¶9.    Robert Watts, a crime scene investigator for the Jackson Police Department, testified that he arrived at the scene of the accident at 8:17 that morning after the trucks had already been towed from the accident scene. He took photographs at the scene. He also went to the impound lot and processed the white Chevy truck for evidence and collected the driver's side airbag, as well as a cell phone and a computer. Watts testified that airbags deploy when there is impact to the vehicle and that the only way that someone's DNA or blood would be on the airbag is if the person were in the truck when the airbag deployed. He also testified that airbags were sealed before deployment; in this case he removed the driver's side airbag sealed in the steering wheel. Watts testified he was unable to locate any fingerprints on the

vehicle. He also took six swabs from the truck for DNA. He testified that these six swabs were never tested because testing the airbag was a bigger priority.

¶10. Accident reconstructionist Michael Outland testified that he was also called that morning to investigate the accident. In his investigation he noted that the airbag in the white truck had deployed and that the keys were still in the ignition. The driver was not on the scene when police arrived, but they found books and a book-bag belonging to Manyfield in the truck. He also testified that the truck's tag and registration indicated that Timothy and Angela Manyfield owned the truck. This led him to the Manyfield home. Outland testified that he spoke to Laertez Manyfield's father, Timothy, who told him that Timothy and Angela had loaned Manyfield the truck because his vehicle was disabled and that Laertez was using the truck. Timothy was also a witness at trial, and he testified his son Laertez had access to the truck on the day of the accident, but all the children in the house had access to it. Timothy also testified that a police officer came to his house on May 6 and asked to speak to Laertez, who lived with his parents. Timothy stated that Laertez left with the officer.

¶11. Photos of Manyfield taken on May 6 were admitted into evidence. These photos show injuries to Laertez's arms, leg, and hand. Outland testified that based on his experience the injury to Manyfield's right arm was indicative of an airbag abrasion. Outland also testified that intoxication and a suspended driver's license could be reasons for a person to flee the scene of a collision site. Outland obtained Manyfield's driving records. These records showed that Manyfield had been charged and convicted of a DUI on November 22, 2015, and that his driver's license was suspended at the time of the May 6, 2016 accident. Police also

located a watch in the driver's side door of the white truck. Outland testified that Manyfield was wearing a similar watch in pictures on social media. Outland testified that based on his investigation he concluded that Manyfield was the driver of the white truck. Further, Outland testified that through his investigation he determined that Manyfield's white truck was traveling north on I-55 South in the wrong direction and collided with Freeman's truck, left front to left front.

¶12. JPD investigator James Roberts testified that he obtained a search warrant to collect a saliva sample from Manyfield in order to compare his DNA with DNA from the airbag. He took the airbag and the sample from Manyfield to Scales Lab for DNA testing. Kathryn Rodgers, a forensic DNA analyst from Scales, testified that she conducted the DNA testing on the airbag and saliva sample. She was able to obtain a full, single-source DNA profile from the airbag. She compared it to Manyfield's DNA sample and they matched. She testified the frequency of that profile in the general population is less than one in 999 trillion. Rogers also testified about the transfer theory, where DNA on one object could be transferred to another. She acknowledged that DNA on the steering wheel of the truck could have been transferred to the airbag when it was removed, but with each transfer the likelihood of obtaining enough DNA to obtain a full profile is reduced. She testified that in this case, "we did get a full complete profile from the air bag, so the quality was suitable to yield such a profile."

¶13. After the State rested, Manyfield moved for a directed verdict, asserting that the State failed to prove that Manyfield was the driver of the white truck involved in the accident. The

trial court denied Manyfield's motion for a directed verdict. Manyfield did not testify, and his defense presented no other witnesses or other evidence.

¶14. The jury found Manyfield guilty of manslaughter and for felony leaving-the-scene-of-the-accident. The trial court sentenced Manyfield to serve twenty years, with five years suspended, in the custody of the Mississippi Department of Corrections (MDOC) for the manslaughter conviction. For the felony leaving-the-scene-of-the-accident, the trial court sentenced Manyfield to serve twenty years, with five years suspended, in the custody of the MDOC, with the sentences to run concurrently. The trial court also sentenced Manyfield to five years of supervised probation upon his release. Manyfield did not file any post-trial motions. Manyfield appealed.

## DISCUSSION

### I. Manyfield's Prior DUI Conviction

¶15. Manyfield asserts that the trial court erred when it admitted evidence of his prior DUI conviction. In particular, Manyfield asserts that admitting this evidence was extremely prejudicial and that, even if the fact that Manyfield's license was suspended was relevant, there was no justification to tell the jury his license was suspended due to a DUI conviction.

¶16. "The standard of review regarding admission or exclusion of evidence is abuse of discretion. We will not reverse the trial court's evidentiary ruling unless the error adversely affects a substantial right of a party." *Chism v. State*, 253 So. 3d 343, 345 (¶9) Miss. Ct. App. 2018).

¶17. Mississippi Rule of Evidence 404(b) governs the admissibility of prior bad acts. Rule

7

404(b)(1) provides that "[e]vidence of a crime, wrong, or other act is not admissible to prove a person's character in order to show that on a particular occasion the person acted in accordance with the character." However, Rule 404(b)(2) lists a number of permitted uses for such evidence, as follows: "This evidence may be admissible for another purpose, such as proving motive, opportunity, intent, preparation, plan, knowledge, identity, absence of mistake, or lack of accident."

¶18. "Upon admitting the evidence under [Rule of Evidence] 404(b), the Court must still consider the admission of the evidence in connection with [Rule of Evidence] 403." *Simmons v. State*, 813 So. 2d 710, 716 (¶33) (Miss. 2002). Rule 403 provides as follows: "The court may exclude relevant evidence if its probative value is substantially outweighed by a danger of one or more of the following: unfair prejudice, confusing the issues, misleading the jury, undue delay, wasting time, or needlessly presenting cumulative evidence." M.R.E. 403.

¶19. Before trial, Manyfield filed a motion in limine seeking to prohibit the State from introducing evidence of prior crimes under Mississippi Rule of Evidence 404. The State filed a notice of intent to use 404(b) evidence, asserting that it intended to introduce Manyfield's DUI conviction on November 23, 2015, to show his knowledge or intent to leave the scene of the accident because he was still on probation and his license was suspended. The trial court informed the parties that it would take up the issue when it came up during trial and cautioned the State not to mention the evidence before that time.

¶20. During the testimony of the accident reconstructionist, Michael Outland, the State

sought to introduce the evidence, including Outland's testimony and Manyfield's November 23, 2015 DUI first-offense traffic violation, which indicated that he was placed on probation for six months (including the May 6, 2016 date of the accident) and that his driver's license was suspended. After the State proffered Outland's testimony and the trial court heard the parties' arguments, the trial court found that the prior DUI and the accident were close in time and, "just as importantly," that Manyfield was also driving with a suspended license at the time of the accident. The trial court found that these circumstances were extremely probative of his motivation to leave the scene of the accident. With respect to Manyfield's argument that evidence of the DUI conviction, in particular, was unduly prejudicial under Rule 403, the trial court found that a DUI conviction was not a "major felony" or a "major felony of moral turpitude" that would result in an enormous amount of prejudice to Manyfield. Continuing, the trial court found that it could "see an enormous amount of probative value in that evidence, which is clearly indicative of motive." On these grounds, the trial court ruled the evidence was admissible.

¶21. We find that the trial court did not abuse its discretion in admitting evidence of Manyfield's November 23, 2015 DUI conviction. Under Rule 404(b), the trial court found that this evidence was clearly probative as to Manyfield's motive for leaving the scene of the accident in violation of section 63-3-401(1). *See Simmons*, 813 So. 2d at 716 (¶31) (finding that evidence of defendant's prior altercation with the victim was properly admitted where it "was presented as an integral part of the story for the purpose of showing intent and establishing motive"). Regarding Rule 403, the trial court also made the specific

9

determination that any potential prejudice with respect to Manyfield's DUI conviction was outweighed by its "enormous amount of probative value." In *Jones v. State*, 904 So. 2d 149, 152 (¶7) (Miss. 2005), the Mississippi Supreme Court found that "[w]here a trial court determines that potentially prejudicial evidence possesses sufficient probative value, it is within that court's sound discretion whether or not to admit same, since [Rule of Evidence] 403 does not mandate exclusion but rather provides that the evidence *may* be excluded." *See also Chism*, 253 So. 3d at 347 (¶18) (finding no abuse of discretion in admitting evidence of defendant's prior burglary convictions where the "[t]he trial court determined that the evidence of the prior convictions was not overly prejudicial compared to its probative value"). Accordingly, we find no merit in Manyfield's first assignment of error.

## II. Manyfield's Request for a Continuance

¶22. Manyfield asserts that the trial court erred in denying his motion for a continuance because the State provided a DNA report to him on Friday, August 31, 2018, four days before his trial was set to begin on September 5, 2018, that showed Manyfield's DNA matched the DNA on the truck's airbag. On September 4, Manyfield filed a motion for a continuance based on the State's alleged late production of this information. The trial court heard his motion prior to the start of trial the next day.

¶23. To briefly review the facts relating to this issue, on May 6, 2016, a crime scene investigator collected evidence from Manyfield's white truck, including the driver's side airbag. The crime scene report noted the airbag was collected and the record reflects that this report was provided to Manyfield in discovery in December 2016 or early 2017. On July 31,

2018, the State obtained a search warrant for a saliva sample from Manyfield. The affidavit for the search warrant stated the purpose for the saliva sample was to see if Manyfield's DNA matched any DNA collected from the airbag, as follows:

> The saliva sample is to be used as evidence and [to] compare [Manyfield's] DNA to the swab sample of DNA that was collected from the [a]irbag[,] [a]s any DNA on the airbag, which deployed at the time of the wreck, would show conclusively who was driving the vehicle at the time.

Manyfield filed a motion to quash the search warrant and suppress any evidence obtained from it. On August 23, 2018, an investigator obtained Manyfield's saliva sample. The State then sent Manyfield's saliva samples and the airbag to a private lab for DNA testing.

¶24. As noted, Manyfield asserts that he received the lab results that the DNA matched on Friday, August 31, 2018, four days before his trial was set to begin on September 5, 2018, which was right before the Labor Day weekend. At the hearing on his motion for continuance, however, Manyfield acknowledged that he received an email from the prosecutor two days earlier, on Wednesday, August 29, 2018, which gave him the verbal results of the DNA testing that it was a match. The prosecutor then emailed the report to him as soon as she received it on Friday morning.

¶25. The report indicated that Manyfield's DNA matched DNA found on the airbag. Manyfield's attorney requested a continuance after receiving the report, asserting that he needed time to find an expert who can "tell us what [the report] says. And so all I'm asking for is just a delay to be able to find out what this means." The trial court denied Manyfield's motion for a continuance, finding as follows:

> The . . . State produced a written report Friday morning and apparently

11

e-mailed the results Wednesday evening . . . . [I]t's been several days. It's not like this is a brand-new issue that has come up. The results came in last week, but the issue of DNA has been on the table for quite some time. And there were swabs taken and it's been known that there was a possibility that . . . the issue of DNA would be out there.

As the State pointed out, the [airbag] could have been tested by the . . . defense . . . they had ample opportunity for that. I would have been glad to sign an order if the State wouldn't turn it over for destructive testing, if necessary . . . . I'll note it's Wednesday morning and . . . the defense had the report since Friday morning. And I just think it's not appropriate under the circumstances to continue the case for . . . that reason.

We reject Manyfield's assignment of error based upon the trial court's denial of his motion for a continuance for the following reasons.

¶26. First, the Mississippi Supreme Court has repeatedly held that "in order to preserve [the denial of a continuance] . . . for appeal, [the appellant is] . . . required to include the denial of the continuance in his motion for new trial." *Miles v. State*, 249 So. 3d 362, 368 (¶30) (Miss. 2018) (citing cases); *Harvell v. State*, 281 So. 3d 1024, 1030 (¶18) (Miss. Ct. App. 2019). Manyfield did not raise the issue of the trial court's denial of a continuance in a motion for a new trial, thus this issue is procedurally barred.

¶27. Although the supreme court has recognized exceptions to this bar where, for example, "the State did not disclose the identity of its star witness until the morning of trial," *Densmore v. State*, 27 So. 3d 379, 384 (¶19) (Miss. 2009), we do not find that any such exception applies here. In *Densmore*, the supreme court held that the issue was not waived where the trial court's ruling was "clear from the record," and "a post-trial motion reasserting this error would not have developed the record further." *Id.* In this case, although we find that the trial court clearly articulated its basis for denying Manyfield's motion for a

12

continuance, we find that Manyfield could have "developed the record further" in support of his argument in a motion for a new trial.

¶28. Manyfield's primary argument in moving for a continuance was that he needed a delay to obtain an expert "who can tell us what [the DNA report] says." Manyfield could have obtained an expert and conducted a sufficient investigation to attempt to prove the particular prejudice his defense suffered in the absence of a continuance. That information was important to his assignment of error on this point and should have been set forth in a motion for a new trial. Accordingly, consistent with the general rule that if "a denial of a continuance is not included as an assignment of error in a motion for new trial, the issue is not appropriate for appellate review," *Shelton v. State*, 853 So. 2d 1171, 1182 (¶38) (Miss. 2003), we find that Manyfield has waived this assignment of error because he did not raise it in a motion for a new trial.

¶29. We also conclude that Manyfield's assignment of error on this issue is without merit. Manyfield asserts that the trial court erred in denying him a continuance because he needed time to consult an expert and to adequately investigate and prepare his case. He further asserts that the denial of a continuance prevented him from presenting his theory of the case and denied him due process and a right to a fair trial. We disagree.

¶30. "Trial judges have wide latitude in deciding whether to grant continuances, and that decision is left to the sound discretion of the trial judge." *Miles*, 249 So. 3d at 368 (¶32). "The key inquiry is whether under the unique facts of that case the trial court allowed a reasonable opportunity to prepare confront the State's evidence at trial." *Patterson v. State*,

93 So. 3d 43, 46 (¶10) (Miss. Ct. App. 2011) (internal quotation marks omitted).[1]  In this case, the record reflects that Manyfield was afforded a reasonable opportunity to prepare to confront the DNA evidence.

¶31.  In December 2016 or early 2017 Manyfield knew the airbag was collected as evidence, as well as six other swabs from the truck.  It was foreseeable that even at this time that the State may conduct DNA testing on the airbag or the swabs.  As the trial court found, Manyfield had "ample opportunity" to test the airbag, and there was nothing to prevent him from securing a DNA expert early in the case in the event that the State tested the evidence for DNA and the results were not favorable.  Even if the December 2016–early 2017 time period is not considered, Manyfield knew DNA would be an issue when the State obtained

---

[1] Judge McCarty's separate opinion asserts that the trial court has "the power to grant [only] three remedies when the State untimely produces evidence right before a trial," namely, "exclude the evidence, grant a continuance for a period of time reasonably necessary for the defense to meet the non-disclosed evidence, or grant a mistrial." (Quoting MRCrP 17.9(b)(2)).  Because the trial court chose none of these courses of action, Judge McCarty's separate opinion finds it was in error.

Judge McCarty's separate opinion's reliance on Rule 17.9(b)(2) is misplaced.  As specifically stated in that rule, this provision only applies when the State "*during the course of trial*, . . . attempts to introduce evidence which has not been timely disclosed to the defense." MRCrP 17.9(b)(2) (emphasis added).  In this case, the State produced the DNA report prior to trial, and Manyfield's motion for a continuance was heard and decided before trial started.  Under these circumstances, Rule 17.9(a) provides in relevant part that "[i]f, *at any time prior to trial*, it is brought to the attention of the court that a party has failed to comply with an applicable discovery rule . . . the court *may* . . . grant a continuance, or enter such other order as it deems just under the circumstances." MRCrP 17.9(a) (emphasis added).

Indeed, Judge McCarty's separate opinion presupposes a violation of Rule 17.9—but sanctions under Rule 17.9 are only applicable where the State has failed to comply "with an applicable discovery rule," MRCrP 17.9(c), or failed to "timely disclose[]" evidence "as required by these Rules." MRCrP 17.9(b).  In this case the State obtained the test results shortly before trial and immediately disclosed them in accordance with its continuing duty to disclose pursuant to Rule 17.8.

14

the search warrant for his saliva in July 2018. As noted, the affidavit supporting the search warrant plainly stated that "the saliva sample is to be used as evidence and [to] compare [Manyfield's] DNA to the swab sample of DNA that was collected from the [a]irbag." At that point Manyfield could have secured an expert to help prepare him to confront the DNA test results. We find that it was certainly in the trial court's sound discretion to find that Manyfield had ample time to confront the State's evidence and deny Manyfield's request for a continuance.

¶32. We also find that reversal is not warranted because Manyfield cannot show manifest injustice occurred when his continuance was denied. "For there to be error, an appellate court must find that the denial of the continuance resulted in manifest injustice." *Patterson*, 93 So. 3d at 46 (¶11) (internal quotation mark omitted). In this regard, "[t]he burden of showing manifest injustice is not satisfied by conclusory arguments alone; rather, the defendant is required to show concrete facts that demonstrate the particular prejudice to the defense." *Jackson v. State*, 231 So. 3d 257, 264 (¶34) (Miss. Ct. App. 2017).

¶33. On appeal, Manyfield simply makes general assertions similar to those he made before the trial court—that he needed time to consult an expert in order to present his case or, as he adds on appeal, "consider trying to secure a plea bargain given what the expert[] says." Manyfield did not present anything concrete to demonstrate how his defense would have been different had the continuance been granted. Indeed, the record reflects that Manyfield's counsel thoroughly cross-examined the State's DNA expert and secured her admission that it was possible that Manyfield's DNA could have been transferred from the steering wheel

15

to the airbag when it was removed. As we observed above, Manyfield *could have* attempted to secure "concrete facts" by securing an expert and attempting to demonstrate how he was prejudiced when his motion for a continuance was denied, and then included this information in a motion for a new trial. That he did not do so further supports Manyfield's inability to meet his burden of proving manifest injustice occurred when his motion for continuance was denied. We find no merit in this assignment of error.

### III. Sufficiency and Weight of the Evidence

¶34. Manyfield asserts that the State did not establish beyond a reasonable doubt that he was the driver of the truck at the time of the accident because there were no witnesses placing him behind the wheel of the truck at that time and there existed the possibility that his DNA on the airbag could have been transferred from other parts of the truck when the airbag was collected. For these reasons, Manyfield asserts that "the evidence was either insufficient as a matter of law or the conviction was against the weight of the evidence."

### A. Sufficiency of the Evidence

¶35. In *Johnson v. State*, 224 So. 3d 66, 68 (¶4) (Miss. 2016), the supreme court explained that "[w]hen reviewing a challenge to the sufficiency of the evidence," the appellate court "will reverse and render only if the facts and inferences point in favor of the defendant on any element of the offense with sufficient force that reasonable men could not have found beyond a reasonable doubt that the defendant was guilty." *Id.* In this regard, the evidence is considered "in the light most favorable to the State [, and] [t]he State receives the benefit of all favorable inferences that reasonably may be drawn from the evidence." *Id.* (citation

omitted).

¶36. We recognize that this is a circumstantial-evidence case. "Direct evidence is unnecessary to support a conviction so long as sufficient circumstantial evidence exists to establish guilt beyond a reasonable doubt." *Underwood v. State*, 708 So. 2d 18, 35 (¶49) (Miss. 1998). Where a conviction is based on circumstantial evidence, the supreme court has held that "[c]ircumstantial evidence need not exclude every possible doubt, but only every other reasonable hypothesis of innocence." *Neal v. State*, 805 So. 2d 520, 526 (¶20) (Miss. 2002) (internal quotation marks omitted). "Our system of justice allows the jury to make logical and reasonable inferences and presumptions." *Edwards v. State*, 167 So. 3d 1286, 1289 (¶22) (Miss. Ct. App. 2014). "From these reasonable inferences, even if jurors could have come to different conclusions on each element of the crime, the evidence remains sufficient." *Id.* "Moreover, a mere fanciful or farfetched or unreasonable hypothesis of innocence is not sufficient to require an acquittal." *Travis v. State*, 972 So. 2d 674, 680-81 (¶26) (Miss. Ct. App. 2007).

¶37. Here, the "jury heard ample evidence to form a reasonable and permissible inference that [Manyfield] was guilty." *Id.* at 680 (¶26). The testimony at trial reflected that Manyfield's parents had loaned him the truck because his vehicle was disabled and that he was using the truck on the date of the accident. Manyfield's books and book-bag were found in the truck. The jury also heard testimony that before the accident Manyfield was seen at a bar with alcohol. Manyfield had been recently convicted of a DUI, and his license was suspended at the time of the accident. Such evidence shows he had a motive to leave the

17

scene of the accident under these circumstances. Further, Ricky Howard testified that shortly after the accident he saw a man running down the frontage road who was brown-skinned, with a "low" haircut, and "fit"—a description fitting Manyfield's general appearance. Photographs taken of Manyfield on May 6 were admitted into evidence that showed injuries to Manyfield's arms, leg, and hand. Accident reconstructionist Michael Outland testified that Manyfield's injuries were consistent with a car accident and airbag burns.

¶38. Most importantly, DNA analyst Kathryn Rodgers testified that Manyfield's DNA matched the DNA found on the truck's driver's side airbag. We recognize that Manyfield asserts that there is a possibility that his DNA was transferred to the airbag from other parts of the truck, but we find that such a "hypothesis of innocence" is unreasonable. *See id.* Crime scene investigator Watts testified that airbags are sealed before deployment, and that in this case he removed the driver's side airbag that had been sealed in the steering wheel. Although DNA analyst Rodgers testified that it was possible that DNA on the steering wheel of the truck could have been transferred to the airbag when it was removed, the jury also heard her testimony in which she explained that with each transfer, the likelihood of obtaining enough DNA to obtain a full DNA profile is reduced. Rodgers testified that in this case they did get a "full[,] complete profile from the airbag," so the quality was suitable to yield such a profile. She testified that the frequency of that profile in the general population is less than one in 999 trillion.

¶39. We find that there was ample evidence presented upon "which a jury could have reasonably relied to find, beyond a reasonable doubt, that no reasonable inferences of

innocence existed," *Neal*, 805 So. 2d at 526 (¶22), that Manyfield was the driver of the truck when it caused the accident that killed James Freeman and that Manyfield left the scene of the accident.

### B.     Weight of the Evidence

¶40.    Manyfield did not file a motion for a new trial, and therefore he did not preserve his challenge to the weight of the evidence for appeal. *Kimble v. State*, 270 So. 3d 940, 947 (¶29) (Miss. Ct. App. 2018) ("Because [the defendant] did not file a motion for a new trial, he is procedurally barred from challenging the weight of the evidence on appeal."); *Allen v. State*, 200 So. 3d 1100, 1101 (¶3) (Miss. Ct. App. 2016) (holding that a defendant must first raise a claim that the verdict was against the weight of the evidence in a motion for a new trial in order to preserve the issue for appeal).

¶41.    Procedural bar notwithstanding, based upon the same evidence and testimony addressed above, we also find that Manyfield's challenge to the weight of the evidence is without merit. "When considering a challenge to the weight of the evidence, the verdict will only be disturbed when it is so contrary to the overwhelming weight of the evidence that to allow it to stand would sanction an unconscionable injustice." *Smith v. State*, 275 So. 3d 100, 110 (¶35) (Miss. Ct. App. 2019) (internal quotation mark omitted). "[W]e have held that the jury is the sole judge of the weight of the evidence and the credibility of the witnesses." *Pruitt v. State*, 122 So. 3d 806, 809 (¶8) (Miss. Ct. App. 2013) (internal quotation mark omitted). "Conflicts in the evidence are for the jury to resolve." *Id.* (internal quotation mark omitted). Taking the evidence that supports the jury's verdict as true, and

19

bearing in mind that it is the jury's role to weigh the evidence and make reasonable inferences, we find that allowing the verdict to stand in this case would not sanction an "unconscionable injustice." *Id.* at 809 (¶¶6-8).

¶42. **AFFIRMED.**

**BARNES, C.J., J. WILSON, P.J., GREENLEE, LAWRENCE AND C. WILSON, JJ., CONCUR. WESTBROOKS, J., SPECIALLY CONCURS WITH SEPARATE WRITTEN OPINION, JOINED BY McDONALD, J.; McCARTY, J., JOINS IN PART. McDONALD, J., CONCURS IN PART AND DISSENTS IN PART WITHOUT SEPARATE WRITTEN OPINION. McCARTY, J., CONCURS IN PART AND DISSENTS IN PART WITH SEPARATE WRITTEN OPINION, JOINED BY TINDELL AND McDONALD, JJ.**

**WESTBROOKS, J., SPECIALLY CONCURRING:**

¶43. While I agree with the majority as to the outcome, I do believe that the trial court gave the prosecution an unfair advantage. More to the point, Manyfield was denied a fair and a reasonable opportunity to provide any meaningful counter to the DNA report—a report that should have been made available at the initial discovery phase of the criminal proceedings. Instead, the report was forwarded to Manyfield on the Friday before his trial was set to begin on Wednesday. Given the fact that Monday was Labor Day, Manyfield was left with just one business day to locate and retain an expert to examine the DNA report. As Judge McCarty's separate opinion states, this was classic ambush evidence, and the prosecution was given an unfair advantage when the trial court denied Manyfield's request for a continuance and elected to proceed with trial. The majority's conclusion is correct, but this case highlights an area of our criminal law that needs work.

¶44. Regarding the failure to make pre-trial disclosures, Mississippi Rule of Criminal

20

Procedure Rule 17.9(a) states:

> If, at any time prior to trial, it is brought to the attention of the court that a party has failed to comply with an applicable discovery rule or an order issued pursuant thereto, the court may order such party to permit the discovery of material and information not previously disclosed, grant a continuance, or enter such other order as it deems just under the circumstances.

Judge McCarty writes that "[a] court has the power to grant three remedies when the State untimely produces evidence right before a trial." According to Judge McCarty's reading of the rule, "the court shall exclude the evidence, grant a continuance for a period of time reasonably necessary for the defense to meet the non-disclosed evidence, or grant a mistrial." (Emphasis omitted). However, the part of Rule 17.9 dealing with pre-trial disclosures uses the word "may" and offers no mandatory remedy for situations like the one presented in the facts of this case. As the majority correctly notes, the rule uses "shall" when addressing the three remedies the trial court must choose among when a party seeks to introduce evidence at trial not previously disclosed. In the case currently before this Court, the disclosure issue occurred before trial had begun.

¶45.  I agree with the general sentiment of Judge McCarty's argument surrounding the application of Rule 17.9 to the current facts, but I join in the majority's application and conclusions. Notwithstanding my agreement with today's outcome, Rule 17.9, as currently written and applied, affords defendants like Manyfield inadequate protection against prosecutorial ambush. The rule mandates that trial courts remedy disclosure failures once trial has commenced, yet it provides no such mandatory protection when the ambush occurs on the Friday before trial. Something more has to be done with this rule and practice to

21

protect defendants like Manyfield against unfair advantages. While the rule as written does not allow for reversal here today, there is certainly error in logic if one business day is enough to satisfy pre-trial disclosures.

**McDONALD, J., JOINS THIS OPINION. McCARTY, J., JOINS THIS OPINION IN PART.**

**McCARTY, J., CONCURRING IN PART AND DISSENTING IN PART:**

¶46. While I agree with the Court that Manyfield's prior DUI conviction properly came in and that the weight of the evidence was met, the defendant should have received a continuance. When there is "ambush" evidence as in this case, where the DNA result was disclosed less than a week before trial, a trial court can either grant a mistrial, suppress the evidence, or grant a continuance. Because the trial court here refused to follow the Rules of Criminal Procedure and instead blazed ahead with trial, I respectfully dissent in part.

¶47. A court has the power to grant three remedies when the State untimely produces evidence right before a trial. When "the defense claims unfair surprise or undue prejudice and seeks a continuance," then the Rule is clear: "the court *shall* . . . exclude the evidence, grant a continuance for a period of time reasonably necessary for the defense to meet the non-disclosed evidence, *or* grant a mistrial." MRCrP 17.9(b)(2) (emphasis added).

¶48. While choosing among the three remedies may be discretionary, the use of the word "shall" means these are the *only* three remedies that a court can use. For "unlike the discretionary nature of 'may,' the word 'shall' is a ***mandatory*** directive." *Ivy v. Harrington*, 644 So. 2d 1218, 1221 (Miss. 1994) (heavy emphasis by the Supreme Court itself). Only one of those three paths may be traveled.

22

¶49. Nonetheless, the trial court in this case decided it would wander down a fourth path: that trial would proceed. Because the defense claimed prejudice and was literally unable to obtain an expert prior to trial, this is a clear violation of Rule 17.9. The Rule mandatorily requires selection among one of the remedies of exclusion, continuance, or mistrial. This legal error requires reversal for a new trial.

¶50. Not only does this violate the letter of the Rule, it also violates the spirit of the Rules as well. The "Rules are to be interpreted . . . to protect the rights of individuals while protecting the public." MRCrP 1.2. The rights of Manyfield were not protected by pushing him to trial in violation of an express rule on the point.

¶51. It is also important to note that the DNA results were produced on Friday, and the following Monday was Labor Day. With trial set to begin on Wednesday, the defendant had only *one full business day* to respond to the evidence. Even if we ignored Rule 17.9, which we should not, this is itself an abuse of discretion. For before trial, counsel for Manyfield argued to the trial court that "it's our intent to hire somebody" to analyze the DNA report, and the defense had begun the process by communicating with another lawyer as well as a national clearinghouse for experts. However, counsel was unable to hire someone in such a short amount of time (and in the one business day defense counsel had before trial, he was attending a hearing in Franklin County). This factual scenario deprived the defendant of the opportunity to prepare a defense, and given these circumstances, it was an abuse of discretion to proceed.

¶52. The Court concludes that in any event, Manyfield knew the State had collected his

23

DNA evidence, so he could have been preparing his own DNA expert simultaneously. Yet we should not expect a defendant to race the prosecution so he can prove his innocence. That is an inversion of our justice system. If the evidence is disclosed untimely, we have a rule that tells us exactly how to cure it—and that there are only three remedies. None of them were followed in this case.

¶53. Because the trial court ignored Rule 17.9 and a continuance should have been granted, I respectfully concur in part and dissent in part.

**TINDELL AND McDONALD, JJ., JOIN THIS OPINION.**